UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

RAYSHELL S. JOHNSON,

Plaintiff,

v.

5:26-CV-01474
(AJB/ML)

INTERNAL AFFAIRS,

Defendant.

---

APPEARANCES: OF COUNSEL:

RAYSHELL S. JOHNSON
*Pro Se* Plaintiff
3720 S. Salina Street Apt. #1
Syracuse, New York 13205

MIROSLAV LOVRIC, United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

The Clerk has sent a *pro se* complaint in the above captioned action together with an application to proceed *in forma pauperis* ("IFP") filed by Rayshell S. Johnson ("Plaintiff") to the Court for review. (Dkt. Nos. 1, 2.) For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application and recommend that Plaintiff's Complaint be dismissed in its entirety without leave to amend. (Dkt. Nos. 1, 2.)

## I. BACKGROUND

Construed as liberally[1] as possible, the Complaint alleges violations of Plaintiff's rights

---

[1] The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

by Defendant Internal Affairs, described by Plaintiff as an "Investigation Department." (*See generally* Dkt. No. 1.)

Utilizing the form § 1983 complaint, Plaintiff provides a meandering factual narrative describing herself as having "been back and forth trying to receive help for my life," claiming local attorneys "are recording" and "are on my whole life," and stating she "was told to say I am a kidnapped individual." (Dkt. No. 1 at ¶ 4.) Plaintiff also simultaneously filed seven pages of exhibits including (1) a statement from Plaintiff explaining that she felt "as if I'm kidnapped," and that she had "written presidents x 2 so now I am entering further info to make sure [I am] compensated with full and maximum rewards;" (2) an appearance ticket for trespass issued by the Syracuse Police Department on or about July 20, 2026; (3) a notification that Plaintiff is barred from Onondaga County public libraries effective July 10, 2026 through July 10, 2027 for verbal abuse of library staff; (4) a City of Syracuse "Constituent Request Form" dated July 28, 2026 on which Plaintiff requests a meeting with local officials; and (5) a notice that an unspecified criminal case has been scheduled in Syracuse City Court.[2] (Dkt. No. 1, Attach. 1.) [3]

Plaintiff seeks leave to proceed IFP. (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee

---

[2] The date of the hearing is unclear, as the notice includes notations that appear to have been handwritten by Plaintiff. (Dkt. No. 1, Attach. 1 at 5.)

[3] Plaintiff provided the identical exhibits in another case where this Court recently recommended dismissal. *See Johnson v. Federal Bureau of Investigation*, No. 5:26-CV-01476 (AJB/ML).

for commencing an action. 28 U.S.C. § 1915(a)(1).[4] After reviewing Plaintiff's IFP application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.[5] Therefore, Plaintiff's application to proceed IFP is granted.[6]

## III. LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a

---

[4] The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[5] Plaintiff is a prolific filer; having sought IFP status in seven other lawsuits filed in this district in July 2026, including a separate case before this Court. *See, e.g., Johnson v. Federal Bureau of Investigation*, No. 5:26-CV-01476 (AJB/ML). Plaintiff is cautioned that proceeding IFP is a privilege, not an unqualified right. The continued filing of frivolous lawsuits may result in the denial of a request to proceed IFP in an action.

[6] Plaintiff is reminded that, although her IFP application has been granted, she is still required to pay fees that she may incur in this action, including copying and/or witness fees.

complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a . . . complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989)

("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe her pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

First, Plaintiff's Complaint fails to allege any specific causes of action or constitutional violations related to Defendant. Plaintiff appends documents as exhibits to her Complaint, including an appearance ticket for trespass issued by the City of Syracuse Police Department, but she provides no explanation how the exhibits are connected to a purported constitutional violation by "Internal Affairs." Her Complaint includes a single indecipherable cause of action:

> I have been told to stay away from Ben Walsh office for 2 years. Now New Mayor. Making me (kidnapped) stay in Syracuse, N.Y. unfairly, illegal, and violated my life, my body. Upstate Hospital aware.

(Dkt. No. 1 at ¶5.)

As a result, I recommend that Plaintiff's Complaint be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). *See Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (explaining that an action is frivolous when "the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy") (internal quotation marks omitted); *Gillich v. Shields*, No. 18-CV-0486, 2018 WL 2926299 (N.D.N.Y. Apr. 30, 2018) (Peebles, M.J.), *report and recommendation adopted* by 2018 WL 2926302, at *3 (N.D.N.Y. Jun. 8, 2018) (D'Agostino,

J.); *Canning v. Hofmann*, No. 15-CV-0493, 2015 WL 6690170, at *5 (N.D.N.Y. Nov. 2, 2015) (Hurd, J.) ("Under these circumstances, having found that none of the allegations in Plaintiff's meandering and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal."); s*ee also Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988) ("Dismissal [for failure to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure] ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.").

Second, in the alternative, I recommend that the Complaint be dismissed for failure to state a claim upon which relief may be granted. A municipal police department is not susceptible to suit pursuant to 42 U.S.C. § 1983. *La Grande v. Town of Bethlehem Police Dep't*, 08-CV-0738, 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (internal citations omitted). "Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Walker v. U.S. Marshalls*, 08-CV-0959, 2009 WL 261527, at *2 (E.D.N.Y. Feb. 4, 2009) (quoting *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)); *see also Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) (collecting cases).

Accordingly, Defendant Internal Affairs, presumably a reference to a unit of the City of Syracuse Police Department, is not a proper party amenable to suit. As a result, I recommend that, to the extent Plaintiff has articulated or attempted to articulate a constitutional or other federal claim against Defendant, that claim be dismissed. *See Jackson v. Gunsalus,* No. 5:16-CV-00647 (GLS/TWD), 2016 WL 4004612, at *5 (N.D.N.Y. June 24, 2016) (Dancks, M.J.),

report and recommendation adopted by 2016 WL 3983635 (N.D.N.Y. July 25, 2016) (Dancks, M.J.) (dismissing claims against the Syracuse Police Department with prejudice and without leave to amend because the Syracuse Police Department "is not susceptible to suit under § 1983.").

Third, assuming that Plaintiff's naming of "Internal Affairs" as the sole defendant relates to an alleged failure to investigate police wrongdoing, her Complaint fails to state a cause of action. Plaintiff does not have standing to compel any law enforcement agency to prosecute suspected criminal acts or otherwise investigate because there is no private right of action to enforce state or federal criminal statutes. *See generally Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Walker v. CIBC Ltd.*, 20-CV-1337, 2021 WL 3518439, at *5 (N.D.N.Y. Apr. 13, 2021) (Hummel, M.J.) ("It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction."), *report-recommendation adopted by* 2021 WL 3204860 (N.D.N.Y. July 29, 2021) (McAvoy, J.); *Salaman v. City of New Haven*, No. 3:19-CV-577 (MPS), 2019 WL 2231223, at *5 (D. Conn. May 23, 2019) (. . . "there is no constitutional right to an adequate investigation or "after-the-fact punishment" by police officials.")

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem

with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[7]

The deficiencies identified related to Plaintiff's claims against the sole named Defendant, Internal Affairs, are substantive such that a better pleading cannot cure them. The indecipherable allegations set forth in the Complaint do not suggest a constitutional or other federal violation. As a result, I recommend that Plaintiff's Complaint be dismissed without leave to amend. *Cuoco*, 222 F. 3d at 112.; *see, e.g., Jackson,* 2016 WL 4004612, at *5.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED in its entirety without leave to amend** pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

---

[7] *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[8]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: September 23, 2026
Binghamton, New York

Miroslav Lovric
Miroslav Lovric
U.S. Magistrate Judge

[8] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[9] If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

1999 WL 1067841
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Francisco AGUILAR, Plaintiff,
v.
UNITED STATES OF AMERICA, Defendant.

Nos. 3:99–MC–304 (EBB), 3:99–MC–408 (EBB).
|
Nov. 8, 1999.

*Dismissal of Plaintiff's Complaints*

BURNS, Senior J.

***1** Francisco Aguilar, pro se, seeks leave to proceed in forma pauperis ("IFP") to press two meritless complaints against the government, which is prosecuting related civil forfeiture actions against his properties. Although Aguilar is otherwise financially eligible, the court dismisses these complaints sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B) because the purported claims are frivolous, baseless and irremediable.

*Background*
Would-be plaintiff Aguilar is no stranger to this court. He is currently serving a forty-year sentence for drug trafficking at the federal penitentiary in Leavenworth, Kansas. *See United States v. Tracy,* 12 F.3d 1186, 1189 (2d Cir.1993) (affirming conviction and sentence). In connection with his conviction for narcotics offenses, the government filed civil forfeiture actions pursuant to 21 U.S.C. § 881(a) in 1990 and 1991 against four of Aguilar's Connecticut properties, which have since been sold. With the help of CJA-appointed counsel, Aguilar has vigorously defended each of these four actions, three of which remain pending before this court, and are scheduled for trial in January 2000. [1]

1 *See United States v. One Parcel Of Property Located At 2030–32 Main St.,* No. 5:90–cv–544(EBB) (pending); *United States v. One Parcel Of Property Located At 8 Drumlin Rd.,* No. 5:90–cv–545 (EBB) (pending); *United States v. One Parcel Of Property Located At 2034–38 Main St.,* No. 5:90–cv–546(EBB) (pending); *see also United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158(EBB) (closed).

Now Aguilar seeks to take the offensive by filing these purported claims against the government, and serving the current property owners as well as the Assistant United States Attorney who is prosecuting the related forfeiture cases. This court denied without prejudice Aguilar's initial complaint, which was erroneously captioned "United States v. One Parcel Of Property Located At 414 Kings Hwy.," one of the cases already docketed and then pending. *See* Order of June 15, 1999. Upon refiling an amended complaint (the "Amended Complaint") with the appropriate caption, Aguilar also filed a second complaint (the "Second Complaint"), seeking the same relief and asserting essentially the same claims against the government for bringing the other three forfeiture cases. The clerk returned these pleadings because Aguilar failed to complete the IFP forms. *See* Order of August 25, 1999. After Aguilar cured these pleading deficiencies, miscellaneous docket numbers were assigned to the complaints.

In Aguilar's Amended Complaint—the one originally filed against his own property at 414 Kings Highway—Aguilar seeks return of the property, compensatory damages and $100,000,000 in punitive damages "to deter the United States of America from committing a similar Abuse of Power." Aguilar pleads his case in four "Articles," asserting sundry state and federal

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

"constitutional" claims, including conversion, false pretenses, mail fraud, and breach of fiduciary duty. The Amended Complaint also suggests an allegation that the government falsified and deliberately omitted known material facts from its probable cause affidavit in "disregard" of 19 U.S.C. § 1615, the statute outlining the burden of proof in administrative forfeiture proceedings.

The Second Complaint—the one related to the government's seizure of the other three properties—seeks similar equitable and monetary relief, including return of the properties, compensation for "suffering," "usurpation," denial of his use and enjoyment of the properties and lost rents, and one billion dollars in punitive damages. Liberally construed, the Second Complaint simply repeats the claims of the Amended Complaint except for one additional allegation: that Aguilar was entitled to, and did not receive, a hearing prior to the seizure and sale of his properties.

*Discussion*

A. *§ 1915(e)(2)(B) Standards*

***2** The Prisoner Litigation Reform Act ("PLRA") mandates dismissal of an IFP action if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B) (as amended in 1996). Prior to the adoption of the PLRA, district courts had discretion to dismiss frivolous actions; now they are required to do so. *See* Pub.L. 104–134, 110 Stat. 1321 (1996) (making dismissal of frivolous actions mandatory, and also requiring dismissal for failing to state a claim or seeking damages from an immune defendant). Because Aguilar's claims qualify for dismissal under all three of these prongs, the standards for each are set out in turn.

1. *Frivolous or Malicious*

A complaint is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989) (interpreting § 1915(d), later redesignated as § 1915(e)(2)(B)(i), to preclude "not only the inarguable legal conclusion, but also the fanciful factual allegation"). Factual frivolity occurs where "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (quoting *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833). Legal frivolity, by contrast, occurs where "the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Livingston,* 141 F.3d at 327 (internal quotes and citation omitted); *see also Tapia–Ortiz v. Winter,* 185 F.3d 8, 11 (2d Cir.1999) (upholding dismissal as frivolous where "[t]he complaint's conclusory, vague, and general allegations ... d[id] not [ ] suffice to establish" plaintiff's claims).

In addition to frivolous claims, the court must also dismiss any malicious claims, i.e., where "[t]he manifest purpose of appellant's complaint [i]s not to rectify any cognizable harm, but only to harass and disparage." *Tapia–Ortiz,* 185 F.3d at 11.

2. *Failure To State A Claim*

An IFP action must also be dismissed sua sponte if it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Star v. Burlington Police Dep't,* 189 F.3d 462, 1999 WL 710235 (2d Cir.1999) (summarily affirming dismissal made pursuant to § 1915(e)(2)(B)(ii) of purported due process challenge that failed to state a claim). As in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a § 1915(e)(2)(B)(ii) dismissal is warranted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d. 59 (1984).

***3** Pro se complaints, such as these, however, must be read broadly, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and may not be dismissed "simply because the court finds the plaintiff's allegations unlikely." *Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1982) (construing pre-PLRA complaint as frivolous). Therefore,

> a pro se plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim [under § 1915(e)(2)(B)(ii) ], unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.

*Gomez v. USAA Federal Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (per curiam) (vacating § 1915(e)(2)(B)(ii) dismissal where "the district court did not give th[e] pro se litigant an opportunity to amend his complaint, and because [the court] cannot rule out the possibility that such an amendment will result in a claim being successfully pleaded").

3. *Relief Against An Immune Defendant*

Dismissal of an IFP case is also required where plaintiff seeks monetary damages against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also, Spencer v. Doe,* 139 F.3d 107, 111 (2d Cir.1998) (affirming dismissal pursuant to § 1915(e)(2)(B)(iii) of official-capacity claims in § 1983 civil rights action because "the Eleventh Amendment immunizes state officials sued for damages in their official capacity"). Here, even if Aguilar's claims had any merit, the complaints must be dismissed nevertheless because each seeks monetary damages from the United States, which is immune from such relief. *See Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir.1999) (noting "[t]he sovereign immunity of the United States may only be waived by federal statute").

B. *Dismissal Standards Applied*

Aguilar's complaints are devoid of any arguable basis in law or fact. Most of his factual allegations—to the extent they are even comprehensible—are conclusory, vague and baseless. For example, he purports to allege: "The United States of America has misused its power against the Francisco Aguilar's Intangible Rights." (Amended Complaint at 2); and "The United States of America overpassed its bound of its authority and make a tyrannic use of its powers." (Second Complaint at 4). Even the Second Circuit has recognized Aguilar's prior handiwork to be "so indisputably lacking in merit as to be frivolous within the meaning of 28 U.S.C. § 1915(e)." *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 97–6004 (2d Cir. April 23, 1997) (mandate [Doc. No. 167] dismissing appeal of Aguilar's motion to enjoin state default proceedings).

Only two allegations asserted by Aguilar are even arguably actionable: the lack-of-probable-cause argument in the Amended Complaint and the due process claim in the Second Complaint. Both of these, however, must be dismissed because each fails to state a claim for which relief may be granted.

1. *Probable Cause*

***4** The one potentially cogent legal claim that can be derived from a liberal reading of the Amended Complaint has already been conclusively decided by the court and is therefore barred from relitigation. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158 (denying lack-of-probable-cause argument in motion to dismiss [Doc. No. 64] in 1993, and in motions for summary judgment [Doc. Nos. 55, 96] in 1996). Here again, Aguilar reiterates his allegation that the government's affidavit in support of probable cause was tainted because it failed to disclose that the 414 Kings Highway property was subject to a mortgage held by People's Bank, and therefore could not have been purchased with funds traceable to drug sales.

After the government voluntarily dismissed that forfeiture action, this court initially ordered the sale proceeds of the property disbursed to Aguilar. *See id.,* Order of Oct. 25, 1996 [Doc. No. 151]. The bank appealed the order and, during the pendency of the appeal, secured a default judgment in state court against Aguilar. *See People's Bank v. Aguilar,* No. CV–96–0337761–S (Conn.Super.Ct.1997). On the Bank's appeal from this court's disbursal of proceeds to Aguilar, the Second Circuit reversed

and remanded. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* 128 F.3d 125, 128 (2d Cir.1997). On remand, in accordance with the Second Circuit mandate, this court disbursed the proceeds from the sale of 414 Kings Highway to the bank in partial satisfaction of Aguilar's debt owed on the defaulted mortgage. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158, 1999 WL 301704 (D.Conn. May 11, 1999).

Because the lack-of-probable-cause claim, perfunctorily adverted to in Aguilar's otherwise meritless Amended Complaint, has already been addressed in the *414 Kings Highway* forfeiture case, the court will not consider it again. As such, it must be dismissed because it fails to state a claim for which this court could grant further relief.

2. *Due Process*

In addition to his now-stale probable cause allegation about 414 Kings Highway, Aguilar claims in the Second Complaint that he was wrongfully denied a hearing prior to the seizure and sale of the other three properties. However, the constitutional right to a preseizure hearing in civil forfeiture proceedings was not recognized until 1993, two years after the seizure in this case. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (holding that Fifth Amendment Due Process protections apply to civil forfeiture proceedings against real property). Even if such due process protections applied retroactively, Aguilar's challenge to the sale of the properties would lack merit because exigent circumstances required their interlocutory sale.

In civil forfeiture proceedings "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." *Id.* at 62, 114 S.Ct. at 505; *see also United States v. One Parcel Of Property Located At 194 Quaker Farms Rd.,* 85 F.3d 985, 988 (2d Cir.1996) ("[a]bsent exigent circumstances, a hearing, with notice to record owners, is held before seizure."). "To establish exigent circumstances, the Government must show that less restrictive measures—i.e., a lis pendens, restraining order, or bond—would not suffice to protect the Government's interest in preventing the sale, destruction, or continued unlawful use of the real property." *Id.* at 62, 114 S.Ct. at 505.

***5** Aguilar's properties addressed in the Second Complaint were seized because there was probable cause that each had been used to facilitate the offenses for which he was convicted. *See* 21 U.S.C. § 881(a)(7) (1999). This civil forfeiture statute authorizes interlocutory sale of seized properties by two methods, which are incorporated by reference into the statute. *See* 21 U.S.C. § 881(b) (authorizing seizure of property subject to civil forfeiture upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims; 21 U.S.C. § 881(d) (authorizing seizure and summary sale governed by the customs laws codified in the Tariff Act of 1930, 19 U.S.C. §§ 1602–1619). Though the source of authority differs, the standards for sale under each are virtually indistinguishable.

Rule E(9)(b) of the Maritime Rules permits the interlocutory sale of seized property if such property

> is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expenses of keeping the property is [sic] excessive or disproportionate, or if there is unreasonable delay in securing the release of property....

Supplemental Rule for Certain Admiralty and Maritime Claims E(9)(b). Section 1612(a) of the customs laws, by contrast, provides for seizure and summary sale whenever it appears that such property

> is liable to perish or to waste or to be greatly reduced in value by keeping, or that the expense of keeping the same is disproportionate to the value thereof....

19 U.S.C. § 1612(a) (1999).

Here, the Chief Deputy United States Marshal certified that the properties located at both 2030–32 Main St., Bridgeport (No. 5:90–cv–544), and 8 Drumlin Rd., Westport (No. 5:90–cv–545), were abandoned and therefore subject to vandalism, deterioration and depreciation. *See* 2/20/91 Declaration in Support of Motion for Interlocutory Sale [Doc. Nos. 28 (5:90–cv–544), 31 (5:90–cv–545) ] at ¶¶ 4, 5. The marshal also certified that the mortgage obligations exceeded by over $ 1,000 per month the rental income of the 2034–38 Main St., Bridgeport (No. 5:90–cv–546), property, which was several months in arrears and had little or no equity. *See* 2/21/90 Declaration in Support of Motion for Interlocutory Sale [Doc. No. 27 (5:90–cv–546) ] at ¶ 4. This court found these reasons sufficiently exigent to order the interlocutory sales. *See* 8/1/90 Order for an Interlocutory Sale [Doc. Nos. 34 (5:90–cv–544), 50 (5:90–cv–545), 31 (5:90–cv–546) ]. Interlocutory sale was thus warranted under both Rule E(9)(b) and § 1612(a) because the two abandoned properties were liable to deteriorate or lose value and the mortgage liabilities of the rented property were disproportionate in comparison to its value. *Cf. United States v. Esposito,* 970 F.2d 1156, 1161 (2d Cir.1992) (vacating order of interlocutory sale of forfeited home where "there was no finding that t[he amount expended for maintenance and repairs] was excessive or disproportionate").

***6** Aguilar's claim that he was wrongfully denied an opportunity to be heard prior to the sale of his properties is therefore not a cognizable due process challenge because the exigency of the properties' abandonment and disproportionate cost of upkeep required their interlocutory sale. Thus, sua sponte dismissal is warranted because Aguilar's due process claim fails to state a remediable cause of action.

3. *Other Claims*

The remainder of Aguilar's claims are frivolous and can be disposed of readily. To the extent Aguilar's claim invoking 19 U.S.C. § 1615 can be construed as challenging the constitutionality of shifting the burden to the claimant upon the government's showing of probable cause, the Second Circuit has "h[e]ld that it does not violate due process to place the burden of proving an innocent owner affirmative defense on the claimant." *194 Quaker Farms Rd.,* 85 F.3d at 987. In addition, the tort claims for false pretenses and conversion are not actionable as these are intentional torts to which the limited waiver of sovereign immunity of the Federal Tort Claims Act ("FTCA") is inapplicable. *See* 28 U.S.C. § 2680(h); *see also Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994) ("the FTCA does not authorize suits for intentional torts based on the actions of Government prosecutors"). Furthermore, because the United States government is not a fiduciary and owes no associated duties to Aguilar, his breach of fiduciary duty allegation against the government fails to state a claim. Finally, Aguilar also fails to state a valid mail fraud claim as that criminal code provision, 18 U.S.C. § 1341, may only be prosecuted by the government, not against it.

*Conclusion*

For the foregoing reasons, Aguilar's complaints [Nos. 3:99–mc–304 and 3:99–mc–408] are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) because they present frivolous allegations, none of which state a cognizable claim, and seek monetary relief from an immune defendant. Because the court cannot definitively rule out the possibility that amendment to the pleadings might result in an actionable claim, *see Gomez,* 171 F.3d at 796, these dismissals are made without prejudice and may be replead after the conclusion of the related forfeiture proceedings.

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 1067841

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 2926299
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Richard GILLICH, Plaintiff,
v.
Beverly J. SHIELDS, Delaware County Treasurer, et al., Defendants.

Civil Action No. 3:18-CV-0486 (MAD/DEP)
|
Signed 04/30/2018

**Attorneys and Law Firms**

RICHARD GILLICH, 22 Gregory Street, Danbury, CT 06811, pro se.

ORDER, REPORT, AND RECOMMENDATION

David E. Peebles, U.S. Magistrate Judge

***1** This is an action brought by *pro se* plaintiff Richard Gillich against the State of New York, Delaware County, the Delaware County Treasurer, the Delaware County Attorney, and two Assistant Delaware County Attorneys. Accompanying plaintiff's complaint is a motion requesting permission to proceed in the action *in forma pauperis* ("IFP"). Those documents have been forwarded to me for review. For the reasons set forth below, plaintiff's IFP application is denied, and I recommend that his complaint be dismissed, with leave to replead.

## I. BACKGROUND

Plaintiff commenced this action on April 9, 2018 in the United States District Court for the Eastern District of New York. Dkt. No. 1. His complaint, which is entitled "Constitutional Tort, and Common-Law Torts Complaint," is exceedingly difficult to construe and is rife with nonsensical rhetoric. *See generally id.* Nonetheless, it appears—though it is far from clear—that plaintiff's claims stem from defendants' efforts to foreclose upon a property in which he has an interest for the non-payment of taxes. *Id.* Based upon the fact that the property in question is located in Delaware County, which lies within the Northern District of New York, the matter was subsequently transferred to this court by order issued by United States District Judge Pamela K. Chen on April 18, 2018. Dkt. No. 4.

## II. DISCUSSION

### A. Plaintiff's IFP Application

Filed together with plaintiff's complaint is a motion for leave to proceed IFP. Dkt. No. 2. In support of his request, plaintiff asserts that he is unable to pay the required fees, and claims that, in any event, as a *pro se* plaintiff he cannot be forced to pay a fee for commencing an action in a federal district court.[1] Dkt. No. 2. Plaintiff's naked claim that he is unable to pay the required filing fee is unsupported by any affidavit or other reliable information concerning his finances.

1 Despite plaintiff's claim to the contrary, only in a narrow set of civil cases (which are not applicable here) must litigants be permitted to access the court without prepayment of filing fees. *See, e.g., M.L.B. V. S.L.J.*, 519 U.S. 102, 113 (1996).

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. §§ 1914(a). A court is authorized, however, to grant IFP status if it determines that the plaintiff is unable to pay the required filing fee.[2] 28 U.S.C. § 1915(a)(1). Pursuant to section 1915, where a plaintiff seeks leave to proceed IFP, the court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying the required filing fee. 28 U.S.C. § 1915(a)(1).

2 The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

***2** The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court. *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983). Section 1915 only provides that a court must be satisfied "that the person is unable to pay such fees or give security therefor" prior to granting IFP status. 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. United States,* 77 Fed. Cl. 59, 62 (Fed. Cl. 2007) (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) ); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) ("Section 1915(a) does not require a litigant to demonstrate absolute destitution[.]"); *accord, Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). As the Second Circuit has noted, "no party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick,* 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

In support of an IFP application, section 1915 requires that a plaintiff submit an affidavit reflecting all of his assets. 28 U.S.C. § 1915(a)(1). Without the submission of a completed financial affidavit, a plaintiff's application is incomplete, and this defect alone warrants denial of the IFP application. *See, e.g., U.S. v. Copen*, 378 F. Supp. 99, 103 (S.D.N.Y. 1974) ("Leave to proceed in forma pauperis may be obtainable only upon submission by the party of an affidavit made as required by [28 U.S.C. § 1915]."); *accord, Bey v. Syracuse Univ.*, 155 F.R.D. 413, 414 (N.D.N.Y. May 1994) (Scullin, J.).

In this case, without an affidavit detailing the basis for plaintiff's claim that he is unable to pay the applicable filing fee, the court is unable to make a meaningful assessment of whether he should be granted IFP status. Accordingly, his IFP motion is denied without leave to refile with the requisite supporting documentation.

B. Plaintiff's Complaint

1. Standard of Review

Ordinarily, the denial of plaintiff's IFP application would end the court's discussion. Section 1915, however, authorizes the dismissal of the action *sua sponte*, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]" 28 U.S.C. § 1915(e).

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to

address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

***3** When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

### 2. Analysis

As was noted above in part I. of this report, plaintiff's complaint is comprised of forty-one pages of incoherent prose. By way of one small example, in the section of the complaint intended to describe the "nature of the case," plaintiff alleges as follows:

> 14. Notice to the Court: My complaint against these Defendants as listed above hereafter tortfeasors:
>
> 15. For high crimes and Violation of U.S. Constitution and the Bill of rights the police officer tortfeasor a/k/a DELAWARE COUNTY TREASURER officer's order, and Illegal Tax Codes under color of law and the trespass on the holder in due course unalienable rights and private property ancestral land in the name Forfeiture of land under Tax Codes (18 U.S. Code § 242—Deprivation of rights under color of law)[.]

Dkt. No. 1 at 6 (errors in original). While the court has no reason to doubt that plaintiff's intentions in commencing this action are sincere, his complaint is nevertheless nonsensical by any objective measure and is not drafted in a manner that allows the court to meaningfully analyze any purported cause of action in accordance with 28 U.S.C. § 1915(e). Accordingly, I recommend the complaint be dismissed as frivolous. *See Canning v. Hofmann*, No. 15-CV-0493, 2015 WL 6690170, at *5 (N.D.N.Y. Nov. 2, 2015) (Hurd, J.) ("Under these circumstances, having found that none of the allegations in Plaintiff's meandering and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal."); *see also Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("Dismissal [for failure to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure] ... is usually reserved

for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.").

C. Whether to Permit Amendment

***4** Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. d1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, due to the incomprehensible allegations in plaintiff's complaint, it is not clear whether better pleading would permit plaintiff to assert a cognizable cause of action. Nevertheless, out of deference to his *pro se* status, I recommend plaintiff be granted leave to amend his complaint.

If plaintiff chooses to avail himself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). In addition, the amended complaint must include allegations reflecting how the individuals named as defendants are involved in the allegedly unlawful activity. Finally, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted) ).

III. SUMMARY, ORDER, AND RECOMMENDATION

For the reasons set forth above, it is hereby

ORDERED that plaintiff's *in forma pauperis* application (Dkt. No. 2) is DENIED without prejudice. In the event this report is adopted and plaintiff is granted leave to amend his complaint, any amended complaint must be accompanied by either (1) the full filing fee or (2) a new request to proceed in this action without prepayment of the filing fees. Any new IFP application must be supported by appropriate documentation as described above in this report; and it is further respectfully

***5** RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be DISMISSED, with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[3] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

3 If you are proceeding pro se and are served with this order, report, and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report, and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed

period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

The clerk is respectfully directed to serve a copy of this order, report, and recommendation on the *pro se* plaintiff in accordance with the court's local rules.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2926299

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 2926302
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Richard GILLICH, Plaintiff,
v.
Beverly J. SHIELDS, Delaware County Treasurer, et al., Defendants.

3:18-CV-0486 (MAD/DEP)
|
Signed 06/08/2018

**Attorneys and Law Firms**

RICHARD GILLICH, 22 Gregory Street, Danbury, Connecticut 06811, pro se.

**ORDER**

Mae A. D'Agostino, U.S. District Judge:

***1** Plaintiff, Richard Gillich, commenced this action *pro se* on April 9, 2018, against the Delaware County Treasurer, the Delaware County Attorney, the assistant Delaware County Attorneys, Delaware County, and the State of New York. *See* Dkt. No. 1. Plaintiff asserts claims under United States Tort Law and common law in response to Defendants' efforts to foreclose on a property in which Plaintiff has an interest for Plaintiff's non-payment of taxes. Plaintiff filed an application to proceed *in forma pauperis. See* Dkt. No. 2.

On April 30, 2018, Magistrate Judge David E. Peebles issued an Order, Report, and Recommendation denying Plaintiff's IFP application with leave to refile and recommending that Plaintiff's complaint be dismissed with leave to replead for failure to state a claim.

A court may grant a motion to proceed *in forma pauperis* ("IFP") if the party is "unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). When a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Although, the court has the duty to show liberality towards pro se litigants, ... there is a responsibility on the court to determine that a claim has some arguable basis in law before permitting a plaintiff to proceed with an action in forma pauperis." *Moreman v. Douglas*, 848 F. Supp. 332, 333–34 (N.D.N.Y. 1994) (internal citations omitted); *see, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a party need only present a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned" recitation of the alleged misconduct. *Id.* (citations and quotation omitted). In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S.

at 678. “Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.” *Id.* (citation omitted).

***2** When a party files specific objections to a magistrate judge's order and report-recommendation, the district court “make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.” 28 U.S.C. § 636(b)(1)(c) (2009). However, “[g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error.” *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, “the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.” 28 U.S.C. § 636(b)(1)(c).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se*, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, “[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point” (citation omitted) ). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

Having carefully reviewed the April 30, 2018 Order, Report, and Recommendation and the applicable law, the Court finds that Magistrate Judge Peebles correctly denied Plaintiff's motion for leave to proceed IFP and recommended that the Court should dismiss Plaintiff's complaint in its entirety. Magistrate Judge Peebles correctly determined that Plaintiff's complaint was too ambiguous and nonsensical to allow the Court to analyze any purported cause of action. Dkt. No. 6 at 9. Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once “when a liberal reading of the complaint gives any indication that a valid claim might be stated.” *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991). Accordingly, the Court also adopts Magistrate Judge Peebles' recommendation that Plaintiff be permitted an opportunity to amend his complaint.

Although Plaintiff filed objections to Magistrate Judge Peebles' Order, Report, and Recommendation, these objections amount to little more than nonsense and recitals of the accusations levied in the complaint. *See* Dkt. No. 7. Plaintiff does not allege any facts in his objections that indicate any error on the part of Magistrate Judge Peebles in his Order, Report, and Recommendation, but instead merely protests the findings of law by restating allegations contained in his initial complaint. *Id.*

After carefully reviewing Magistrate Judge Peebles' Order, Report, and Recommendation, Plaintiff's submissions, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Peebles' Order, Report, and Recommendation is **ADOPTED** in its entirety for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint is dismissed with leave to replead; and the Court further

***3 ORDERS** that Plaintiff shall file his amended complaint within **THIRTY (30) DAYS** of the filing date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of this Order, the Clerk of the Court shall enter judgment in Defendants' favor without further order of this Court and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2926302

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 6690170
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Erin CANNING, Plaintiff,
v.
Bruno HOFMANN and Bonnie Hofmann, Defendants.
Erin Canning, Plaintiff,
v.
John Canning and Judy Canning, Defendants.

Nos. 1:15–CV–0493, 1:15–CV–0895.
|
Signed Nov. 2, 2015.

**Attorneys and Law Firms**

Erin Canning, Saratoga Springs, NY, pro se.[1]

1 Defendants John and Judy Canning have not yet been served in this matter and, therefore, have not appeared.

Hodgson, Russ Law Firm, Jeffrey T. Fiut, Esq., Michelle L. Merola, Esq., of Counsel, Buffalo, NY, for Defendants Bruno & Bonnie Hofmann.

No Appearances,[1] for Defendants John and Judy Canning.

1 Defendants John and Judy Canning have not yet been served in this matter.

***DECISION and ORDER***

DAVID N. HURD, District Judge.

***1** *Pro se* plaintiff Erin Canning brought an action against defendants Bruno and Bonnie Hofmann in case number 1:15–CV–0493 seeking relief pursuant to five separate federal statutes (the "Lead Case Complaint"). On May 29, 2015, defendants in the Lead Case filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 12. On July 22, 2015, plaintiff filed a separate action against John and Judy Canning in case number 1:15–CV0895 (the "Member Case Complaint"). On September 16, 2015, the Honorable Randolph F. Treece, United States Magistrate Judge, advised by Report–Recommendation that: (i) defendants' motion to dismiss the Lead Case Complaint be granted and (ii) plaintiffs member case complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). While plaintiff did not submit objections to the Report–Recommendation, on September 21, 2015, she filed a 112 page document entitled "Evidence Documents Enclosed and Update", which has been reviewed and considered for the purposes of this Decision & Order. *See* ECF No. 37.

Based upon a de novo review of the portions of the Report–Recommendation to which plaintiff objected, the Report–Recommendation is accepted in whole. *See* 28 U.S.C. § 636(b)(1).

Therefore, it is ORDERED that:

1. Defendants' Motion to Dismiss the Lead Case Complaint (ECF No. 12) is **GRANTED;** and

2. Plaintiff's Member Case Complaint is **DISMISSED** without leave to amend forfailure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and for lack of subject matter jurisdiction; and

3. The consolidated action is hereby closed without consideration of plaintiff's pending motion for injunctive relief (ECF No. 34), motion to expedite relief (ECF No. 39), motion to serve court marshall papers (ECF No. 40) and motion for bill payment (ECF No. 41), as such motions are moot and unnecessary; and it is further ordered that

4. The Clerk serve a copy of this Decision and Order upon plaintiff in accordance with the Local Rules.

The Clerk of the Court shall enter judgment and close this case.

IT IS SO ORDERED.

***REPORT–RECOMMENDATION and ORDER***

RANDOLPH F. TREECE, United States Magistrate Judge.

**I. BACKGROUND**

*Pro se* Plaintiff Erin Canning initially brought this action in the Southern District of New York. Dkt. No. 2, Compl. However, in reviewing the "difficult to understand" pleading, the Honorable Loretta A. Preska, Chief United States District Judge, *sua sponte* transferred the matter to this District, noting that none of the named Defendants are alleged to reside in the Southern District of New York and that the events purportedly giving rise to Plaintiff's claims occurred in Saratoga County, which is located in the Northern District of New York. Dkt. No. 4. Subsequent to the transfer to this District, Defendants Bruno and Bonnie Hofmann waived service of the Complaint and, on May 29, 2015, filed a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 6 & 12. Plaintiff opposes that Motion, [2] Dkt. No. 15, and Defendants submitted a Reply thereto, Dkt. No. 17. Following these filings, the undersigned granted Plaintiff's request to proceed with this matter *in forma pauperis,* but, because Defendants had waived service, the Court did not direct the Marshal to effect service of process upon them. Dkt. No. 14, Text Order, dated June 3, 2015.

2 Plaintiff submitted multiple filings seemingly in support of her opposition to the Hofmanns' dispositive motion. *See* Dkt. Nos. 15, Pl.'s Resp., dated June 5, 2015; 18, Lt., dated June 25, 2015; 23, Supp. Resp., undated, unsigned; & 32, Supp. Resp., undated. The Court has taken into consideration Plaintiff's *pro se* status, and has reviewed all the submissions provided by Plaintiff. The Court notes, however, that in accordance with the standard applicable when reviewing a Motion to Dismiss, the Court will not consider any document that was not originally included nor referenced in the original complaint. Nor, in light of its incognizable format, will the Court construe any subsequent filing to be an amended complaint nor an attempt to amend the operative pleading.

***2** Thereafter, on July 22, 2015, Plaintiff filed a separate action against John and Judy Canning; Plaintiff also sought permission to proceed with that matter *in forma pauperis.* Civ. No. 1:15–CV895 (DNH/RFT), Dkt. Nos. 1, Compl., & 2, Mot. Upon reviewing the pleading, the undersigned found that Plaintiff's two actions were sufficiently related, as defined by the District's General Order 12, and in the interest of judicial economy, consolidated the two cases. *Id.* at Dkt. No. 3. Because Plaintiff had already been granted permission to proceed *in forma pauperis* in the initial action, now deemed the Lead Case, the Court found Plaintiff's subsequent *in forma pauperis* motion to be unnecessary. On August 19, 2015, the Honorable David N. Hurd, United

States District Judge, referred the case to this Court for an initial review and Report–Recommendation on the pending Motion to Dismiss, which the Court performs below. Dkt. No. 33.

## II. DISCUSSION

### A. Lead Case Against Bruno and Bonnie Hofmann

As noted above, Defendants Bruno and Bonnie Hofmann have moved to dismiss the Lead Complaint. Dkt. No. 12.

#### *1. Motion to Dismiss Standard of Review*

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (*overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, ... matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski,* 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991)); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991) (citing FED. R. CIV. P. 10(c)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint* may be considered by the court in ruling on such a motion." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (quoting *Cortec Indus. ., Inc. v. Sum Holding L.P.,* 949 F.2d at 47). However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006). "It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Id.*

***3** The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL–CIO v. Schermerhorn,* 373 U.S. 746, 754, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963); *see also Arar v. Ashcroft,* 532 F.3d 157, 168 (2d Cir.2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal,* 556 U.S. at 697 (citing *Twombly* ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bed All. Corp. v. Twombly,* 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the ... laws in ways that

have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). The process of determining whether a plaintiff has "nudged [his] claims ... across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. at 679–80.

With this standard in tow, we consider the plausibility of Plaintiff s Complaint.

*2. Analysis*

The Complaint against the Hofmanns in the Lead Case is, as Chief Judge Preska pointed out, difficult to understand. Canning's Complaint spans eighty-six pages. Dkt. No. 2, Lead Compl. The initial four pages consist of a *pro forma* complaint ostensibly used by the Southern District of New York for litigants seeking to bring a civil action. From there, the Complaint veers wildly with pages upon pages of medical records, financial account statements, invoices, and other documentation. Apparently, and as best as the Court can surmise, Plaintiff had resided in the Wellington Tower Condominiums, but after circulating a letter to the residents complaining of being harassed by the building superintendent she was removed from the residence. It appears that the residence was owned by Mr. Hofmann, who is possibly Plaintiff s step-father, yet, it is unclear the precise contours of the personal and/or business relationship between Plaintiff and Defendants. Following Plaintiff s "eviction" from the Wellington Tower Condominiums, she was placed in her the care of her father, John Canning, in the Capital District area.

***4** By her Complaint, Plaintiff seeks to bring the following five causes of action against the Defendants, for which she seeks compensatory damages and other forms of relief: (1) 42 U.S.C. § 1985(2); (2) 42 U.S.C. § 1985(3); (3) 42 U.S.C. § 2000aa–6; (4) 18 U .S.C. § 1201; and (5) 18 U.S.C. § 1503. As explained below, none of these purported causes of action are cognizable here.

*a. Section 1985 Claims*

Section 1985 claims concern conspiracies to interfere with an individual's civil rights. The portions of the statute raised by Plaintiff are Sections 1985(2) and 1985(3); the former deals with a conspiracy to obstruct justice, while the latter concerns conspiracies to deprive persons of rights or privileges, neither of which are applicable in the instant case.

By its very terms, Section 1985(2) seeks to prevent instances where justice is obstructed in a federal court proceeding by way of witness or juror intimidation. *Haddle v. Garrison,* 525 U.S. 121, 125, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998) ("The gist of the wrong at which § 1985(2) is directed is not deprivation of property, but intimidation or retaliation against witnesses in federal-court proceedings"). There are no allegations in the Complaint that lead the Court to infer that there was any pending federal court proceeding, that any witness or juror was intimidated, or that Plaintiff was in any way affected or injured. Thus, clearly there is no claim set forth in the Complaint for a violation of Section 1985(2).

To recover under Section 1985(3), a plaintiff must show the existence of (1) a conspiracy (2) meant to deprive a person or persons of the equal protection of the laws or privileges and immunities under the laws with (3) "an overt act in furtherance of the conspiracy[,] (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States[,]" and (5) "some racial or perhaps otherwise class-based, invidious discriminatory animus[.]" *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999) (citations omitted). "In this context, 'classbased animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. New York State Dept. of Corr. Serv's.,* 115 F.Supp.2d 307, 316 (N.D.N.Y.2000) (citations omitted). Thus, to recover damages under § 1985, Plaintiff must allege facts from which purposeful discriminatory intent can be inferred. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 390–91, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (cited in *Hill v. Philip Morris USA,* 2004 WL 1065548, at *4 (S.D.N.Y. May 11, 2004)).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Again, there are no allegations in the Complaint which indicate that Plaintiff was the victim of such discrimination nor that the named Defendants conspired with the aim of discrimination.

Accordingly, the Court recommends that Defendants' Motion to Dismiss be **granted** as to Plaintiff's claims pursuant to 42 U.S.C. §§ 1985(2) and (3).

*b. 42 U.S.C. § 2000aa–6*

***5** Next, Plaintiff asserts that she brings a cause of action pursuant to 42 U.S.C. § 2000aa–6, which is a part of the Privacy Protection Act of 1980, 42 U.S.C. §§ 2000aa–2000aa–12 (“PPA”). The PPA pertains to conduct by governmental employees in connection with the investigation or prosecution of criminal offenses. *See* 42 U.S.C. § 2000aa. “The PPA specifically provides that persons aggrieved under the PPA shall have a civil cause[ ] of action against the United States, against a State which has waived its sovereign immunity, or against any other governmental unit.” *Makas v. New York State Dep't of Motor Vehicles,* 1998 WL 146251, at *3 (N.D.N.Y. Mar.23, 1998) (citing 42 U.S.C. § 2000aa–6(a)(1)). Because this statue authorizes a claim against government officials, Plaintiff could not maintain a claim against the Hofmanns, who are private citizens. No where has Plaintiff alleged that she was the subject of a government search/seizure in connection with an investigation or prosecution of a criminal defense, nor how the Hofmanns participated in any way. Accordingly, we recommend that Defendants' Motion be **granted** and such claims be dismissed.

*c. Title 18 Claims*

Turning next to Plaintiff's claims purportedly brought pursuant to 18 U.S.C. §§ 1201 and 1503, the Court notes that such Title concerns “Crimes and Criminal Procedure” and Plaintiff cannot bring a civil action to enforce criminal statutes. *See Leeke v. Timmerman,* 454 U.S. 83, 85, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981) (noting that a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another); *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994) (noting that criminal statutes do not provide private causes of action). The two sections raised by Plaintiff concern the crimes of kidnapping and obstruction of justice, neither of which allow for private causes of action. Accordingly, we recommend **granting** Defendants' Motion and dismissing such claims.

*3. Conclusion on Lead Complaint*

While the Court recognizes that Plaintiff is proceeding *pro se* and that this requires the Court to treat her pleadings with a certain degree of liberality, *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008), we nevertheless find, as explained above, that the Lead Complaint is wholly insufficient to state any plausible claim for relief or to allow any named Defendant to make a reasonable response. Under these circumstances, having found that none of the allegations in Plaintiff's meandering and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal. *See Ashcroft v. Iqbal,* 556 U.S. at 678 (“[A] complaint [does not] suffice if it tenders ‘naked assertion[s]’ devoid of ‘further factual enhancement.’ ”) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. at 557).

**B. Member Case Against John and Judy Canning**

***6** Next we turn to the civil action initiated by Plaintiff against John and Judy Canning. For this Member case, the Court has allowed Plaintiff to proceed *in forma pauperis* but has not yet reviewed the Complaint to ensure that a proper cause of action is stated. The Court engages in that *sua sponte* review below.

*1. Section 1915(e) Standard of Review*

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis,* “the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.” 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990), and should exercise “extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond.” *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated “enough facts to state a claim to relief that is plausible on its face” *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, “the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.” *Id.* “Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.” *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555). “[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not ‘show[n]'-‘that the pleader is entitled to relief.’ “ *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Furthermore, Federal Rule of Civil Procedure 8 “demands more than an unadorned, the-defendantunlawfully-harmed-me accusation.” *Ashcroft v. Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555). Thus, a pleading that only “tenders naked assertions devoid of further factual enhancement” will not suffice. *Id.* (internal quotation marks and alterations omitted). Allegations that “are so vague as to fail to give the defendants adequate notice of the claims against them” are subject to dismissal. *Sheehy v. Brown,* 335 F. App'x 102, 104 (2d Cir.2009).

***7** Furthermore, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a clam for relief shall contain, *inter alia,* “a short and plain statement of the claim showing that the pleader is entitled to relief.” *See* FED. R. CIV. P. 8(a)(2). The purpose of this Rule “is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense.” *Hudson v. Artuz,* 1998 WL 832708, at *1 (S.D.N.Y. Nov.30, 1998) (quoting *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16(N.D.N.Y.1995) (McAvoy) (other citations omitted)). Rule 8 also provides that a pleading must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a).

Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence-and each defense other than a denial-must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).

The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna,* 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992 (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1323 at 735 (1990)).
A complaint that fails to comply with these Rules presents too heavy a burden for the defendant in shaping a comprehensive defense, provides no meaningful basis for a court to assess the sufficiency of a plaintiff's claims, and may properly be dismissed by the court. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy). As the Second Circuit has stated, "[w]hen a complaint does not comply with the requirement that it be short and plain, the Court has the power, on its own initiative, ... to dismiss the complaint." *Salhuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligble that its true substance, if any, is well disguised." *Hudson v. Artuz,* 1998 WL 832708, at *2 (internal quotation marks and citation omitted). In those cases in which the court dismisses a *pro se* complaint for failure to comply with these Rules, it should afford the plaintiff leave to amend the complaint to state a claim that is on its face nonfrivolous. *See Simmons v. Abruzzo,* 49 F.3d 83, 86–87 (2d Cir.1995).

### *2. Analysis*

***8** The Court first notes that Plaintiff's Complaint in the Member action is not in any acceptable form as proscribed by the Federal Rules of Civil Procedure and this District's Local Rules of Practice. *See* Member Case, 1:15–CV–895, Dkt. No. 1, Compl. The Complaint consists of thirteen typed pages of disjointed narrative and conclusory accusations. Therein, Plaintiff recounts a history of her dealings with her mother and stepfather (Hofmann Defendants) and with her father and stepmother (Canning Defendants). Plaintiff recounts the confrontation with the Hofmann Defendants wherein she was evicted from her residence in Wellington Tower, but this time accuses the Canning Defendants of colluding with the Hofmann Defendants in order to intimidate Plaintiff and gain control of her possessions. It seems that for much of the pleading, Plaintiff is airing her personal family gripes as to the Cannings and the Hofmanns.

According to the Member Complaint, Plaintiff brings forth claims against the Cannings for violations of various criminal statutes under Title 18 of the United States Code, New York State Penal Code, as well as for violations of her rights guaranteed by the First and Fourteenth Amendment, and by the Disability Civil Rights Act of 1964. In terms of relief, Plaintiff seeks a slew of injunctive relief, and has also filed a separate Motion in the Lead case seeking injunctive relief.

#### *a. Criminal Statutes*

As with her claims in the Lead action, Plaintiff cannot maintain any civil cause of action pursuant to the criminal statutes listed in Title 18 of the United States Code. Thus, for the reasons stated above (*see supra* Part II.A.2.c), the Court recommends dismissing that portion of the Member Complaint that purports to bring a civil action under the United States criminal statutes: 18 U.S.C. §§ 241, 249, and 2261 A. Similarly, there is no civil cause of action recognized in 19 U.S.C. § 1592, which deals with penalties for fraud, gross negligence, and negligence in the context of customs duties and smuggling goods into the United States. By its very terms, the statute authorizes, *inter alia,* the United States Custom Service to pursue violations of the statute and assess any penalties. 19 U.S.C. § 1592(b)(1) & (2). It is entirely unclear why Plaintiff is seeking to invoke this statute and what, if any, facts alleged would give rise to the involvement of the Customs Service, thus this claim should be dismissed. And lastly, the Court notes that Plaintiff cannot pursue a civil action against private individuals under New York's Penal Law § 135.65, entitled Coercion in the First Degree, nor under § 135.00, entitled Unlawful Imprisonment, Kidnapping, and Custodial Interference; Definitions of Terms. As with the United States criminal statutes, State criminal statutes cannot be enforced by private citizens through a civil action, thus we would recommend dismissal of such claim.

*b. Constitutional Violations*

Plaintiff asserts that the Canning Defendants violated her rights secured by the United States Constitution under Amendments One and Fourteen. Presumably the, Plaintiff seeks to bring a cause of action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States **by a person acting under color of state law.** *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (quoting 42 U.S.C. § 1983); *see also Myers v. Wollowitz,* 1995 WL 236245, at *2 (N.D.N.Y. Apr.10, 1995) (Section 1983 "is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.,* 1995 WL 743719, at *2 (N.D.N.Y. Dec.6, 1995) (citing *Velaire v. City of Schenectady,* 862 F.Supp. 774, 776 (N.D.N.Y.1994) (citation omitted). Traditionally, the definition of acting under color of state law requires that the Section 1983 defendant "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Kern v. City of Rochester,* 93 F.3d 38, 43 (2d Cir.1996) (quoting *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (internal quotation marks and citation omitted)).

***9** There are no allegations in the Member Complaint which would allow this Court to reasonably infer that the Canning Defendants acted, if at all, under the authority of state law. Thus, to the extent Plaintiff is attempting to assert constitutional violations against the Canning Defendants, such claim must fail.

*c. Disability Civil Rights Act of 1964*

And, finally, with regard to Plaintiff's passing reference to violations under the "Disability Civil Rights Act of 1964 Disability Act of 1990", it appears to the Court that Plaintiff may be attempting to bring a claim under the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.,* although it is entirely unclear to the Court under which section of that Act she seeks to pursue. Title II of the ADA provides, in pertinent part, that

> [n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

The term "public entity" is defined to include "any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]" 42 U.S.C. § 12131(1)(B). To state a claim under Title II of the ADA, a plaintiff must allege "that (1) he or she is a qualified individual with a disability; (2) ... the defendants are subject to the ADA; and (3) ... plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disabilities." *Shomo v. City of New York,* 579 F.3d 176, 185 (2d Cir.2009) (internal quotation marks and alterations omitted).
No where in the Complaint can the Court find any allegations indicating that Plaintiff suffers from a disability, as defined by that Act, or that Defendants were subject to the Act. Indeed, Plaintiff spends a considerable amount of time decrying Defendant John Canning for suggesting that she is mentally infirm. Accordingly, the Court recommends that such claim also be dismissed.

*3. Diversity Jurisdiction*

Plaintiff alleges certain factual allegations that suggest that she is suing the Canning Defendants for State law torts, such as fraud or defamation. Having reviewed Plaintiff's Member Complaint and finding that it fails to raise any federal question causes of action, the Court, in consideration of Plaintiff's *pro se* status, will assess whether there is an additional basis for the Court's jurisdiction over this matter, namely-diversity jurisdiction. *See City of Kenosha, Wisconsin v. Bruno,* 412 U.S. 507, 512, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) (noting that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its own jurisdiction) *see also Alliance of Am. Ins. v. Cuomo,* 854 F.2d 591, 605 (2d Cir.1988) (challenge to subject matter jurisdiction cannot be waived); FED.R.CIV.P. 12(h)(3) (court may raisebasis of its jurisdiction *sua sponte* ). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin,* 303 U.S. 226, 229, 58 S.Ct. 601, 82 L.Ed. 764 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"). The party seeking to invoke the court's jurisdiction bears the burden of "demonstrating that the grounds for diversity exist and that diversity is complete." *Herrick Co., Inc. v. SCS Commc'n, Inc.,* 251 F.3d 315, 322–23 (2d Cir.2001) (citations omitted).

***10** For diversity jurisdiction to exist, the matter in controversy must exceed $75,000 and must be between

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).

For diversity jurisdiction purposes, an individual's citizenship is the individual's domicile, which is determined on the basis of two elements: "(1) physical presence in a state and (2) the intent to make the state a home." *See Zimak Co. v. Kaplan,* 1999 WL 38256, at *2 (S.D.N.Y. Jan.28, 1999) (quoting 15 James Wm. Moore et al., Moore's Federal Practice ¶ 102.34[2] (3d ed.1998)). It appears that the Plaintiff, Defendant John Canning, and Defendant Judy Canning all reside in New York State. As such, we do not have complete diversity because the Defendants are citizens of the same State as Plaintiff. *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (noting that the diversity statute "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant"). Because Plaintiff has failed to establish the basis for the Court's subject matter jurisdiction, dismissal is mandated.

## III. CONCLUSION

As explained above, the Court has reviewed both the Lead and Member Complaints and find that Plaintiff has failed to state a claim upon which relief could be granted and is subject to dismissal. *See Ashcroft v. Iqbal,* 556 U.S. at 678 ("[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' ") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. at 557). Under such circumstances, the Court would normally grant a *pro se* litigant, such as Plaintiff, an opportunity to amend the Complaint in order to avoid dismissal. *Thompson v. Carter,* 284 F.3d 411, 416 (2d Cir.2002). However, such measures are not warranted here because, as explained above, any amendment would be futile. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (dismissal is appropriate where leave to amend would be futile).

Because the Court recommends dismissal of the entire action, consideration of Plaintiff's Motion for Injunctive Relief (Dkt. No. 34) is unnecessary.

For the reasons stated herein, it is hereby

**RECOMMENDED,** that Defendants' Motion to Dismiss the Lead Complaint (Dkt. No. 12) be **GRANTED** and the matter be dismissed; and it is further

**RECOMMENDED,** that Plaintiff's Member Complaint be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and for lack of subject matter jurisdiction; and it is further

**RECOMMENDED,** that if the District Court adopts the above recommendations, the entire consolidated action be closed without consideration of Plaintiff's pending Motion for Injunctive Relief (Dkt. No. 34); and it is further

***11 ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such obj ections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WTTHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Serv's.,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Filed Sept. 16, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 6690170

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 2868231
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Quentin LA GRANDE, Plaintiff,
v.
TOWN OF BETHLEHEM POLICE DEPARTMENT, et al., Defendants.

No. 1:08–CV–0738 (LEK/DRH).
|
Sept. 1, 2009.

**Attorneys and Law Firms**

Quentin La Grande, Albany, NY, pro se.

Nannette R. Kelleher, Bailey, Kelleher Law Firm, Albany, NY, for Defendants.

***DECISION AND ORDER***

LAWRENCE E. KAHN, District Judge.

***1** Plaintiff *pro se* Quentin La Grande ("Plaintiff" or "La Grande") commenced the instant action against Defendants Robert Helligrass[1], Stephen Kraz[2] and the Town of Bethlehem Police Department (collectively, "Defendants") pursuant to 42 U.S.C. § 1983. Complaint (Dkt. No. 1). Presently before this Court is Defendants' Motion to dismiss (Dkt. No. 13) and Plaintiff's Motion for summary judgment (Dkt. No. 12). For the following reasons, Defendants' Motion to dismiss is granted and Plaintiff's Motion for summary judgment is denied.

1 Incorrectly named in the Complaint as "R.J. Helliergrass." *See generally* Complaint (Dkt. No. 1).

2 Incorrectly named in the Complaint as "William Craz." *See generally* Complaint.

## I. BACKGROUND

According to Plaintiff, "[o]n April 1, 2008 I was threaten by Patrol Officer William Craz. Patrol Officer called me a 'Nigger,' and also threaten to cause bodily harm to me. On April 2, 2008 I met with Seargent R.J. Helliergrass and was interogated, and racial harrassed. On or about April 5, 10, 15, May 6, 8, 10, 15, and June 6, 2008, I have been followed by the Bethlehem Police Department." Compl. at 2. Plaintiff's jurisdictional statement asserts that the Complaint is being brought pursuant to 42 U.S.C. § 1983. *Id.* at 1.

In lieu of filing an answer, on March 11, 2009, Defendants filed the Motion to dismiss presently before the Court. Mot. to Dismiss (Dkt. No. 13). Plaintiff also filed a Motion for summary judgment on February 24, 2009, which is now before the Court. Mot. for Sum. Judg. (Dkt. No. 12).

## II. DISCUSSION

### A. Defendants' Motion to Dismiss

**a. Standard of Review**

In order to withstand a motion to dismiss, “a [pleading] must contain sufficient factual matter ... to ‘state a claim to relief that is plausible on its face.’ ” *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A party must plead with such factual detail so as to sufficiently “ ‘nudge [ ][its] claims ... across the line from conceivable to plausible.’ ” *Iqbal,* 129 S.Ct. at 1950–51 (quoting *Twombly,* 550 U.S. at 570). While stating a claim does not require the recitation of detailed factual allegations, it does, however, require facts sufficient to state a claim to relief that is *prima facie* plausible. *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 555). The Court must accept the allegations in the well-pleaded complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and draw all inferences in favor of the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1973); *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 154 (2d Cir.2006); *King v. Am. Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002).

In assessing the legal sufficiency of the Complaint, the Court is mindful that La Grande is a *pro se* litigant and his submissions are subject to “less stringent standards than formal pleadings drafted by lawyers.” *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The Court must “read the pleadings of a *pro se* plaintiff liberally and interpret them ‘to raise the strongest arguments they suggest.’ ” *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999); *see Hemphill v. New York,* 380 F.3d 680, 687 (2d Cir.2004) (“ “It is well-established that ‘when a plaintiff proceeds *pro se* the court is obligated to construe his pleadings liberally, particularly when they allege civil rights violations' ”) (quoting *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004)). However, a plaintiff's *pro se* status “does not exempt [him] from compliance with relevant rules of procedural and substantive law.” *Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983).

**b. Analysis**

***2** Defendants move to dismiss Plaintiff's Complaint in its entirety pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure.[3] Mot. to Dismiss (Dkt. No. 13) at 1. Defendants specifically argue that all causes of action against the Town of Bethlehem Police Department must be dismissed as it is not a legal entity subject to suit under 42 U.S.C. § 1983 and further that Plaintiff's entire Complaint should be dismissed for failing to state a cause of action. *Id.* at 4.

3 Defendants argue, alternatively, that Plaintiff's Complaint should be dismissed pursuant to 28 U.S.C. § 1915(e) and for failing to adhere to Rule 8(a) of the Federal Rules of Civil Procedure. The Court need not address these arguments as it is dismissing Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

**i. Town of Bethlehem Police Department**

The Town of Bethlehem moves to dismiss Plaintiff's Complaint on the ground that it is not susceptible to suit under 42 U.S.C. § 1983. While a municipality may be susceptible to suit under 42 U.S.C. § 1983, a municipal police department is not. *See Walker v. Waterbury Police Dep't.,* 08–cv–959 (JG)(AKT), 2009 U.S. Dist. LEXIS 7933, at *5, 2009 WL 261527 (E.D.N.Y. Feb. 4, 2009). “Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued.” *Id.* (citing *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002)). Accordingly, claims asserted under 42 U.S.C. § 1983 will be dismissed against a municipality's police department. *See Walker,* 2009 U.S. Dist. LEXIS 7933, at *5, 2009 WL 261527 (internal citation omitted); *see also Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

Here, Plaintiff has sued the Town of Bethlehem Police Department along with two individual officers of the department. *See generally* Compl. Plaintiff's Complaint asserts that it is brought pursuant to 42 U.S.C. § 1983 and does not provide any other basis for the claims. *Id.* at 1. Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, Plaintiff's Complaint is dismissed as against the Town of Bethlehem Police Department.

Even assuming *arguendo* that Plaintiff's claims against the Town of Bethlehem Police Department can be construed as a claim against the Town of Bethlehem, Plaintiff's Complaint would still be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

In order to state a cause of action for municipal liability under 42 U.S.C. § 1983, "a plaintiff must allege that the municipality has adopted a custom or policy which is the moving force behind the [alleged constitutional violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 649 (N.D.N.Y.1997). A municipality cannot be held liable on the basis of *respondeat superior* and "a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Campanaro v. City of Rome,* 999 F.Supp. 277, 281 (N.D.N.Y.1998); *see also Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993).

Plaintiff's Complaint is devoid of any allegations that the Town of Bethlehem had a policy or custom of violating constitutional rights, nor does plaintiff allege or even allude that the Town was deliberately indifferent to his constitutional rights. The complete failure to plead such warrants dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as the Complaint fails to state a cause of action for which relief can be granted under 42 U.S.C. § 1983. *See Campanaro,* 999 F.Supp. at 281; *Dwares,* 985 F.2d at 100.

**ii. Defendants Kraz and Helligrass**

***3** La Grande's Complaint alleges that between April and June 2008, he was "racially harassed," "threatened" and "interrogated" by Defendants Kraz and Helligrass, two officers of the Bethlehem Police Department. Compl. at 2. Specifically, La Grande alleges that on multiple occasions the officers addressed him with a racial epithet and followed him through town. *Id.* It is well settled in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Murray v. Pataki,* No. 9:03–cv–1263, 2007 U.S. Dist. LEXIS 26959, at *22, 2007 WL 956941 (N.D.N.Y. Mar. 29, 2007) (Kahn, J.) (quoting *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003)) (collecting cases). "[V]erbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Murray,* 2007 U.S. Dist. LEXIS, at * 22 (quoting *Moncrieffe v. Witbeck,* 2000 U.S. Dist. LEXIS, at *3, 2000 WL 949457 (N.D.N.Y. June 29, 2000)); *see also Zeno v. Cropper,* 650 F.Supp. 138, 141 (S.D.N.Y.1986) ("vile and abusive language ... no matter how abhorrent or reprehensible cannot form the basis for a § 1983 claim) (internal citation and quotation omitted). Further, "threats do not amount to violations of constitutional rights." *Murray,* 2007 U.S. Dist. LEXIS, at *23 (quoting *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995)).

In this case, Plaintiff's claim for verbal harassment in the form of racial slurs and threats is not actionable under § 1983 and, therefore, fails to state a claim entitled to relief. Compl. at 2.

**B. Plaintiff's Motion for Summary Judgment**

Even assuming *arguendo* that this Court did not grant Defendants' Motion to dismiss, Plaintiff's Motion for summary judgment would still be denied. Under the Local Rules, *"all* motions ... require a memorandum of law, supporting affidavit, and proof of service on all the parties." N.D.N.Y. L.R. 7.1(a) (emphasis added). "All memoranda of law shall contain a table of contents and, wherever possible, parallel citations." *Id.* at 7 .1(a)(1). Further "[a]ny motion for summary judgment shall contain a Statement of Material Facts ... *Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." Id.* at 7 .1(a)(3) (emphasis in original).

Here, not only did the Plaintiff fail to submit a memoranda of law in support of his Motion for summary judgment and an affidavit but he also failed to submit a Statement of Material Facts. In fact, in his Motion for summary judgment filed on February 24, 2009, Plaintiff explicitly stated, "I will provide this Court with a 'Law Memorandum' in support of my motion; such will contain applicable law, and case law. I will submit this to the Court on or before March 6, 2009." Mot. for Sum. Judg. at 1. To date, this Court has nor received said memorandum of law. While this Court recognizes Plaintiff's *pro se* status, he has failed to comply with *all* of the Local Rules. *See Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983) (a plaintiff's *pro se* status "does

not exempt [him] from compliance with relevant rules of procedural and substantive law"). Accordingly, Plaintiff's Motion for summary judgment is denied for failing to comply with the relevant rules of procedure. *See, e.g.,* N.D.N.Y. L.R. 7.1(a), 7.1(a)(3).

### C. Amended Complaint

***4** Plaintiff also moves to amend his Complaint. Response (Dkt. No. 27). While *pro se* litigants are generally afforded wide latitude and an opportunity to amend, a District Court need not permit an amendment to a Complaint where it would be futile. *See Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (holding that although leave to amend should be freely given where justice so requires, a district court need not grant leave if amendment would be futile); *Acito v. Imcera Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995).

Here, Plaintiff's Complaint does not state any viable causes of action under 42 U.S.C. § 1983. Further, Plaintiffs Complaint does not state which, if any, of his constitutional rights were violated by Defendants nor does it plead any facts to establish municipal liability. Plaintiff's Complaint also does not plead any facts supporting his allegations that he was "racially harassed," "threatened" or "interrogated." Since, as the Court discussed above, none of the complained of actions provides the basis for a cognizable cause of action, leave to cure these defects would be futile. These deficiencies may have been excusable, albeit not cureable, had this Court not previously informed Plaintiff of the requirements for pleading a cause of action under 42 U.S.C. § 1983 against a municipality. *See La Grande v. Albany Police Dep't,* 1:07–CV–757 (Dkt. No. 4).[4] Given that leave to amend would be futile, this Court denies Plaintiff's request.

4 Notably, Plaintiff has also filed numerous Complaints in the Northern District, many of which include assertions of civil rights violations and racial discrimination or harassment, wherein Plaintiff has been granted leave to amend his complaints. Plaintiff has filed eleven suits in the Northern District since 2000, including the instant matter. In fact, on May 12, 2008, Chief United States District Judge Norman A. Mordue entered an order enjoining Plaintiff from filing any further actions or pleadings in this district without the prior permission of the Chief Judge. Dkt. No. 6. This Order was entered based on a record of vexatious and frivolous pleadings previously filed by La Grande.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that Defendants' Motion to dismiss (Dkt. No. 13) is **GRANTED in its entirety;** and it is further

**ORDERED,** that Plaintiff's request to amend his Complaint (Dkt. No. 27) is **DENIED;** and it is further

**ORDERED,** that Plaintiff's Motion for summary judgment (Dkt. No. 12) is **DENIED in its entirety;** and it is further

**ORDERED,** that the Clerk serve a copy of this Decision and Order on all parties.

**IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2009 WL 2868231

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 261527
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Thomas WALKER IV, Plaintiff,
v.
U.S. MARSHALS, Waterbury Police Department, and 7th/6th Precincts,
Suffolk County Police Department, Mastic/Selden NY, Defendants.

No. 08-CV-959 (JG)(AKT).
|
Feb. 4, 2009.

**Attorneys and Law Firms**

Thomas Walker, IV, Riverhead, NY, pro se.

Carmody & Torrance LLP, by: Howard K. Levine, New Haven, CT, for Defendant Waterbury Police Department.

*MEMORANDUM AND ORDER*

JOHN GLEESON, District Judge.

***1** Plaintiff Thomas Walker IV, currently incarcerated in the Suffolk County Correctional Facility, brings this *pro se* action under 42 U.S.C. § 1983, claiming that various police department officials violated his Eighth Amendment right against cruel and unusual punishment by denying him medical treatment. Walker is seeking "adequate medical attention for those after me"; appointment of a special prosecutor to investigate the misconduct of Suffolk County law enforcement agencies; $5,000,000 in damages; and appropriate consequences for each offending officer. Defendant Waterbury Police Department ("WPD") moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), (2) and (6) as well as 28 U.S.C. § 1915A(b). For the reasons stated below, the motion is granted.

BACKGROUND

The following facts are drawn from the plaintiff's complaint, filed March 3, 2008, and are assumed to be true for the purposes of this motion.

On November 26, 2007, Walker was arrested in the parking lot of his apartment in Waterbury, Connecticut by U.S. Marshals, police detectives from the 6th and 7th precincts of Suffolk County Police Department and police officers from the Waterbury Police Department. He was taken to the Waterbury Police Department, where he was placed in a room for questioning. When Walker asked to speak with a lawyer, the detectives with whom he was speaking left the room. Later, the detectives returned to speak with Walker and promised him that if he made a written statement, he would be released from jail like his co-defendant. [1]

1 There is nothing else in the record before me about a co-defendant in Walker's case.

Upon being brought to the police department, Walker had begun to feel nauseated and dizzy. While being questioned by the detectives, he vomited and dry-heaved several times into a garbage can. Walker told the detectives that he had never felt this

way before and requested that he be taken to a hospital for medical attention. The detectives promised Walker that he could see a doctor only if he "helped" them by signing a confession. After signing a statement, Walker was placed in a cell but did not receive medical treatment until the following day, when he was admitted to Walker Correctional Facility, where his blood pressure was monitored for three days.

DISCUSSION

A. *The Legal Standard for a Motion to Dismiss*

Motions to dismiss pursuant to Rule 12(b)(6) test the legal, not the factual, sufficiency of a complaint. *See, e.g., Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.' " (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998))). Accordingly, I must accept the factual allegations in the complaint as true. *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007). However, I do not give effect to "legal conclusions couched as factual allegations." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir.2007) (citing *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007)).

***2** While generally "[s]pecific facts are not necessary" to state a claim so long as the statement gives the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests,' " *Erickson,* 127 S.Ct. at 2200 (quoting *Twombly,* 127 S.Ct. at 1964), in at least some circumstances a plaintiff must plead specific facts in order to survive a motion to dismiss. *Twombly,* 127 S.Ct. at 1964-65. The Second Circuit has interpreted this principle as a "flexible 'plausibility standard' " under which a plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (emphasis omitted) (interpreting *Twombly* ). The Second Circuit's subsequent decision in *Boykin v. KeyCorp,* 521 F.3d 202, 213 (2d Cir.2008), however, strongly suggests that *Twombly* does not significantly alter the lenient, notice-focused standard used to assess the complaint of a *pro se* litigant. *Id.* at 213-14. *Boykin* noted that after *Twombly,* the Supreme Court's decision in *Erickson* addressed the sufficiency of a *pro se* plaintiff's pleading under Federal Rule of Civil Procedure 8(a). Relying on *Erickson,* the *Boykin* court concluded that "departure from Rule 8(a)'s liberal pleading standard was particularly unwarranted" where the complaint was filed *pro se:* " 'A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Boykin,* 521 F.3d at 214 (quoting *Erickson,* 124 S.Ct. at 2200).

When considering a motion to dismiss, a court may examine (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; or (4) documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit. *Brass v. American Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

B. *WPD's Motion to Dismiss*

The Waterbury Police Department moves to dismiss Walker's complaint on the ground that it is not susceptible to suit under 42 U.S.C. § 1983.

A municipality is subject to suit pursuant to 42 U.S.C. § 1983. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 690 (1978). A municipal police department, however, is not because it is a sub-unit or agency of the municipal government, which fulfills the municipality's policing function. "Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002); *see also Kamholtz v. Yates County,* No. 08-CV-6210, 2008 WL 5114964, at *8-9 (W.D.N.Y. Dec. 3, 2008) (dismissing claims against the Yates County Sheriff's Department on the ground that a municipality's police department is not subject to suit because it is considered an administrative unit of the county); *Jones v. Waterbury Police Dep't,* No. 3:04CV2137, 2005 WL 1185723, at *2 (D.Conn. May 12, 2005) (dismissing all § 1983 claims against Waterbury Police Department "[b]ecause a municipal police department is not an independent legal entity"); *Nicholson v. Lenczewski,*

356 F.Supp.2d 157, 164 (D.Conn.2005) (collecting cases); *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999) ("A police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity."); *Willard v. Town of Hamburg,* No. 96-CV-0187E(H), 1996 WL 607100, at *1 (W.D.N.Y. Sept. 30, 1996) (dismissing claims against the police department and the town board because they do not "exist separate and apart from the Town and [they] do not have their own legal identities").

***3** Because Walker asserts claims against WPD, an entity that is not amenable to suit under 42 U.S.C. § 1983, all claims against the WPD are dismissed pursuant to 28 U.S.C. § 1915A(b)(1) ("[T]he court shall ... dismiss the complaint, or any portion of the complaint, if the complaint-is frivolous, malicious, or fails to state a claim upon which relief may be granted"). *See also* 28 U .S.C. § 1915(e)(2)(B)(i) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal-is frivolous or malicious").

Dismissal of the claims against WPD begs the question whether Walker's claims should be construed as being brought against the city of Waterbury. *See Sheikh v. City of New York, Police Dep't,* Nos. 03-CV-6326, 05-CV-4718, 2008 WL 5146645, at *10 n. 12 (E.D.N.Y. Dec. 5, 2008) (construing claims brought against the New York Police Department and Department of Corrections as claims against the City of New York); *Manning v. County of Westchester,* 93-Civ-3366, 1995 WL 12579, at *2 (S.D.N.Y. Jan. 5, 1995) (removing the Westchester County Police Department as a named defendant because the County of Westchester was the real party in interest and was already a named defendant).

To prevail on a § 1983 claim against a municipality for acts committed by its police officers, a plaintiff must (1) prove the existence of a municipal policy or custom that caused his injuries, *Monell,* 436 U.S. at 694, and (2) establish a "causal link" between the official policy or custom and the alleged civil rights violation, *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983). On a motion to dismiss, to satisfy the first prong of the test, Walker must allege the existence of one of the following:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Jones v. Westchester County Dep't of Corr. Med. Dep't,* 557 F.Supp.2d 408, 417 (S.D.N.Y.2008) (internal quotation marks omitted).

Construing his *pro se* complaint liberally, *see Erickson,* 124 S.Ct. at 2200, I conclude that Walker's complaint cannot plausibly be read to allege a policy or custom that would support municipal liability on the part of the City of Waterbury. Rather, the allegations are directed at the municipal practices of Suffolk County and its detectives. Specifically, Walker, who refers to the Waterbury "police" and Suffolk County "detectives," consistently describes the individuals who interrogated him and allegedly coerced a confession from him as "detectives." In addition, Walker devotes considerable space in his complaint to his broad-ranging allegations that Suffolk County has a history of police misconduct: "I have reviewed the history of Suffolk County and ... according to ... officials and non-officials ... Suffolk detectives miraculously obtained confessions in almost every case they investigated.... I request that the appointment of a special prosecutor look into the misconduct of the Suffolk County law enforcement agencies." Compl. 2-3. Accordingly, I conclude that Walker's allegations do not and cannot state a claim for municipal liability against the City of Waterbury. Thus, I do not construe his claims against WPD to be claims that should be properly brought against the City of Waterbury.

CONCLUSION

***4** For the reasons stated above, WPD's motion to dismiss is granted.

So ordered.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 261527

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 4004612
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kelvin JACKSON, Plaintiff,
v.
John GUNSALUS, et al., Defendants.

5:16-cv-00647 GLS/TWD
|
Signed 06/24/2016

**Attorneys and Law Firms**

Kelvin Jackson, Syracuse, NY, pro se.

**REPORT-RECOMMENDATION AND ORDER**

THÉRÉSE WILEY DANCKS, United States Magistrate Judge

***1** The Clerk has sent this *pro se* complaint to the Court for review. (Dkt. No. 1.) Plaintiff commenced this action under 42 U.S.C. § 1983, naming the City of Syracuse, the Syracuse Police Department, and four members of the Syracuse Police Department as Defendants. *Id.* Generally, Plaintiff alleges he was subjected to excessive force during his arrest in violation of his civil rights and New York State tort law. *Id.* at ¶¶ 4-5. Plaintiff seeks monetary damages for his pain, suffering, and mental anguish. *Id.* at ¶ 6.

## I. SCREENING OF THE COMPLAINT

Having previously found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis* (Dkt. No. 4), the Court must consider the sufficiency of the allegations set forth in the complaint pursuant to 28 U.S.C. § 1915(e). Section 1915(e) directs that when a person proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules

of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

***2** Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## II. COMPLAINT

Plaintiff alleges that Syracuse Police Officers John Gunsalus and William Lashomb used excessive force during an arrest. (Dkt. No. 1. at ¶ 4.) Specifically, Plaintiff alleges that Defendant Gunsalus struck Plaintiff in the face and body with a closed fist, causing facial contusions. *Id.* Plaintiff further alleges that Defendant Lashomb struck Plaintiff in the back, which led to multiple fractures. *Id.* Plaintiff also brings supervisory liability claims against Defendants Sergeant Michael Smith and Chief Frank Fowler. *Id.* Lastly, Plaintiff names the Syracuse Police Department and the City of Syracuse as Defendants because they are the entities that employ Defendants Gunsalus, Lashomb, Smith, and Fowler. *Id.*

## III. ANALYSIS

### A. Police Officers in their Official Capacities

Plaintiff seeks monetary damages from Defendants "as Police Officers and in [their] Individual capacity." *Id.* To the extent that Plaintiff's complaint can be construed to raise claims against Defendants Gunsalus, Lashomb, Smith, and Fowler in their official capacities for violations of the Fourth Amendment, such claims cannot stand.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d. Cir. 1977)).

Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). "[C]laims against a government employee in his official capacity are treated as a claim against the municipality," and, thus, cannot stand under the Eleventh Amendment. *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008).

Accordingly, the Court recommends that all claims against Defendants Gunsalus, Lashomb, Smith, and Fowler in their official capacities be dismissed with prejudice and without leave to amend.

### B. Gunsalus and Lashomb

"The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (citing *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999)). "When

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

determining whether police officers have employed excessive force in the arrest context, the Supreme Court has instructed that courts should examine whether the use of force is objectively reasonable 'in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation.' " *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)) (punctuation omitted). Among the most relevant facts and circumstances are (1) the severity of the crime allegedly committed; (2) the threat of danger to the officer and society; and (3) whether the suspect was resisting or attempting to evade arrest. *Thomas*, 165 F.3d at 143. Reasonableness is generally a question of fact. *See McKelvie v. Cooper*, 190 F.3d 58 (2d Cir. 1999).

***3** Plaintiff alleges that Defendants Gunsalus and Lashomb subjected him to excessive force during his arrest. (Dkt. No. 1 at ¶ 4.) Specifically, Plaintiff alleges that Defendant Gunsalus struck Plaintiff in the face and body with a closed first, causing facial contusions. *Id.* Plaintiff also alleges that Defendant Lashomb struck Plaintiff on the back, which lead to multiple fractures. *Id.*

Mindful of the Second Circuit's direction that a *pro se* plaintiff's pleadings must be liberally construed, *Sealed Plaintiff*, 537 F.3d at 191, the Court recommends that Plaintiff's § 1983 claims for excessive force and assault and battery against Defendants Gunsalus and Lashomb be found to survive initial review and require a response. [1] In so recommending, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment. [2]

1 Although Plaintiff fails to allege the date of his arrest, such information can be ascertained through discovery. The Court recommends exercising supplemental jurisdiction over Plaintiff's state law claims against Defendants Gunsalus and Lashomb pursuant to 28 U.S.C. § 1367(a).

2 Because Plaintiff does not include the date of his arrest, the Court is unable to discern whether or not Plaintiff's § 1983 claims for excessive force and assault and battery would be barred by the applicable statute of limitations. *Owens v. Okure*, 488 U.S. 235, 251 (1989) (statute of limitations on § 1983 claims to which New York law applies is three years); N.Y. C.P.L.R. § 215(3) (McKinney 2006) (an action for assault and battery shall be commenced within one year).

**C. Smith and Fowler**

Plaintiff brings a supervisory liability claim against Defendants Smith and Fowler. (Dkt. No. 1 at ¶ 4.) Under Second Circuit precedent, " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the defendant is a supervisory official, a mere linkage to the unlawful conduct through the chain of command (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam).

In other words, supervisory officials may not be held liable merely because they held positions of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citations omitted). Rather, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).

***4** Here, Plaintiff claims that Defendant Sergeant Smith engaged in "nonfeasance," failed to properly investigate the "circumstances," and did not fill out the "use of force report properly." (Dkt. No. 1 at ¶ 4.) Plaintiff alleges Chief Fowler was responsible for "over seeing this misconduct" and failed to "reprimand[ ]" the individual officers. *Id.*

Based on the foregoing, the Court finds that Plaintiff has failed to alleged facts plausibly stating a supervisory liability claim under § 1983 against Defendants Smith or Fowler and recommends dismissal of those claims without prejudice and with leave to amend.

**D. City of Syracuse**

Plaintiff names the City of Syracuse as a Defendant. *Id.* "To establish liability under 42 U.S.C. § 1983 against a municipality ... a plaintiff must show that the claimed constitutional violation resulted from a municipal custom or policy." *Ahern v. City of Syracuse*, 411 F. Supp. 2d 132, 139 (N.D.N.Y. 2006). An "official policy or custom" can be shown in several ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come in contact with the municipal employees. *Dorsett–Felicelli, Inc. v. Cnty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)).

"Custom denotes persistent and widespread practices, and thus proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* ...." *Ahern*, 411 F. Supp. 2d at 139 (punctuation and citation omitted).

A local government entity's alleged failure to train its employees creates liability under § 1983 only "[i]n limited circumstances." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Indeed, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* The "stringent standard" of deliberate indifference applies to failure-to-train claims. *Id.*

In order to prevail, the plaintiff must demonstrate that the municipality was "on actual or constructive notice that a particular omission in [its] training program causes ... employees to violate citizens' constitutional rights [and] the policymakers chose to retain that program." *Id.* (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.*

Here, Plaintiff does not allege facts plausibly suggesting a custom or policy. Rather, Plaintiff simply brings this action against the City of Syracuse "for it being the entity these officers of the law work for." (Dkt. No. 1 at ¶ 4.)

Based upon the foregoing, the Court finds that Plaintiff has failed to state a municipal liability claim under § 1983 against the City of Syracuse and recommends dismissal of the claim without prejudice and with leave to amend.

**E. Syracuse Police Department**

***5** Plaintiff names the Syracuse Police Department as a Defendant. *Id.* However, a municipal police department is not susceptible to suit under § 1983. *La Grande v. Town of Bethlehem Police Dept.*, No. 1:08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009 [3]); *Davis v. Lynbrook Police Dept.*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (internal citations omitted). "Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Walker v. U.S. Marshalls*, No. 08-CV-959 (JG)(AKT), 2009 WL 261527, at *2 (E.D.N.Y. Feb. 4, 2009) (quoting *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)); *see also Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) (collecting cases).

3 The Court will provide Plaintiff with copies of unpublished decisions in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76, 76 (2d Cir. 2009) (per curium).

Here, Plaintiff's § 1983 claim against the Syracuse Police Department, which has no legal, separate identity apart from the City of Syracuse, is not plausible. Therefore, the Court recommends dismissal of the claim with prejudice and without leave to amend.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that the complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND** against Defendants Gunsalus, Lashomb, Smith, and Fowler in their official capacities; and it is further

**RECOMMENDED** that the complaint be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND** against Defendant Syracuse Police Department; and it is further

**RECOMMENDED** that the complaint be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** against Defendants Smith, Fowler, and the City of Syracuse; and it is further

**RECOMMENDED**, that this action be allowed to proceed against Defendants Gunsalus and Lashomb in their individual capacities on Plaintiff's § 1983 claims for excessive force and assault and battery, and that Defendants, or their counsel, be required to file a response as provided for in Rule 12 of the Federal Rules of Civil Procedure; and it is further

**RECOMMENDED** that in the event the District Court allows Plaintiff to file an amended complaint, he be instructed that any amended complaint be a complete pleading that supersedes his original complaint in all respects (and does not incorporate by reference any portion of his original complaint), and that he not attempt to reassert any claims that have been dismissed with prejudice by the District Court; and it is hereby

**ORDERED**, that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4004612

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3518439
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Myrna Althia Alicia WALKER, Plaintiff,
v.
CIBC LIMITED, Defendant.

1:20-CV-1337 (TJM/CFH)
|
Signed 04/13/2021

**Attorneys and Law Firms**

Myrna Althia Alicia Walker, 841 Western Avenue, Apartment 2A, Albany, New York 12203, Plaintiff pro se.

## REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

### I. In Forma Pauperis

***1** Plaintiff pro se Myrna Althia Alicia Walker purported to commence this action on October 28, 2020, by submitting a complaint and application to proceed in forma pauperis ("IFP") in lieu of paying the Court's filing fee. See Dkt. No. 1 ("Compl."); Dkt. No. 2. On March 15, 2021, plaintiff submitted a supplement to her complaint. Dkt. No. 4. On April 6, 2021, plaintiff submitted an additional filing entitled "Emergency Petition for the Death Penalty Against Adethia Keshia Fitten and Others on the Principle Found in the Law of Necessity." Dkt. No. 5. On April 7, 2021, plaintiff submitted additional 86 pages to supplement to her complaint. Dkt. Nos. 6, 7. On April 8, 2021, plaintiff submitted additional exhibits and a letter requesting to file those exhibits under seal. Dkt. No. 8.

The Court has reviewed plaintiff's IFP application and determines that she financially qualifies to proceed IFP for purposes of filing only. [1]

1 Plaintiff is still financially responsible for any other fees or costs she may incur.

### II. Legal Standards

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting her to proceed with her action. As plaintiff is representing himself, the court must afford plaintiff special solicitude; thus, it is to consider her claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.' " Cold Stone Creamery, Inc. v. Gorman, 361 F. App'x 282, 286 (2d Cir. 2010) (summary order) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought ....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

***2** Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff leave to amend the complaint. Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

## III. Initial Review

### A. Plaintiff's Complaint

Plaintiff purports to bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000, et seq. On her form Title VII complaint, she indicates that defendant discriminated against her due to her race and color, religion, sex, and "my date of birth – Easter." Compl. at 2. Plaintiff further indicates, through checking the boxes on the form complaint, that defendant terminated her employment, failed to promote, engaged in unequal terms and conditions of employment, retaliated against her, and "forced prostitution; [i]dentity theft, which is used to do Bank frauds & Poisonings." Id.

Plaintiff's complaint, inclusive of exhibits, is 158 pages long. Dkt. No. 1. Included with the exhibits to the complaint is an Equal Employment Opportunity Commission ("EEOC") dismissal notice [2] noting that plaintiff's EEOC charge was not timely filed and the EEOC was closing its file. Dkt. No. 1-1. The remainder of the exhibits appended to the complaint appear to be an 80-page letter relating to apparent visa fraud that plaintiff sent to The US Department of Justice; the United States Department of Homeland Security, Immigration and Customs Enforcement; and the Federal Bureau of Investigation; as well as an incident report dated May 29, 2019, regarding an apparent rape of plaintiff. Dkt. No. 1-2 at 81-82.

2 It appears that the EEOC dismissal notice is dated September 10, 2020. Dkt. No. 1-1.

***3** The supplement plaintiff filed on March 15, 2021, is 112 pages long. Dkt. No. 4. The supplement appears to be filings from a complaint plaintiff had before Supreme Court, Rensselaer County against Unity House of Troy and Joseph Posa. Id. The "emergency motion," filed on April 4, 2021, is 22 pages long, with 70 additional pages of exhibits. Dkt. No. 5. These exhibits are (1) various transfer orders and orders of protection plaintiff either sought or obtained against various individuals in family court proceedings in different counties (dkt. no. 5-1); (2) a residential lease agreement from July 2018, for a property in Troy, New York, with landlord Joseph Posa (dkt. no. 5-2); (3) records from a proceeding before the Rensselaer County Supreme Court in a case captioned Myrna Althia Alicia Walker vs. "Change of Name" Heidi Elizabeth Zuach (dkt. no. 5-3); and (4) a lease agreement dated May 2, 2017, between Capital Group Management LLC and plaintiff for a property in Troy, New York (dkt. no. 5-4). The submission filed on April 7, 2021, is 59 pages long and includes various orders of protection, a USPS tracking number report, a Unity House Domestic Violence Services Transitional Housing Program Handbook, a form from the Rensselaer County Department of Social Services, earnings statements, a New York State incident report from 2018, an eviction notice, a letter from the Unity House Transitional Housing program, a "notice" letter, and a "birth registration" form. Dkt. No. 6-6. The exhibits filed on April 7, 2021, appear to be letters plaintiff sent to the New York State Department of Labor, United States Department of Homeland Security, Immigration and Customs Enforcement, and the EEOC, apparently related to "pandemic unemployment compensation benefits." See dkt. no. 7.

Plaintiff's complaint discusses Allison Carolyn Rattray, the Corporate Secretary and Legal Counsel of defendant CIBC First Caribbean International Bank (Jamaica) Limited. Dkt. No. 1 at 3. Plaintiff contends that Ms. Rattray kills unidentified people "with her married name" and drinks plaintiff's blood. Id. Apparently, plaintiff contends that Ms. Rattray is or was her "employer" who "uses the drinking blood of the employee to kill the employing the employment agreement and the incomes paid by direct deposit as the consideration for the blood that is drank before the killings and the doomings if [sic] innocent persons." Id. at 4. Plaintiff also appears to suggest that Ms. Rattray and her husband, "Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica," force plaintiff to use "illegal psychotropic medicines," cocaine, and alcohol. Id. at 5. Plaintiff refers to an employment agreement she signed with Ms. Rattray in 1995 and appears to suggest that since that date, Ms. Rattray "has been stalking the Plaintiff inside her bedroom, bathroom mirror, on her cell phone from 1995 even until today October 20, 2020 even the bathroom stables has visual and audio devices inside of them." Id. at 6. The Complaint then appears to proceed to explain why Ms. Rattray and her various family members are carrying out unspecified killings. See generally Dkt. No. 1. Plaintiff further suggests that through her employment with defendant, both defendant and the Commercial Division of the Supreme Court of Jamaica

> has been using me as a sex doll; as sex services; as sex product also incorporating The University of the West Indies Hospital to do surgeries; using illegal force of The Jamaican police; using the illegal Force of the Jamaican Army; using the illegal force of the Jamaican parliament to have men from any where have sex with The Plaintiff because The Plaintiff was born on the day the crucifixion was celebrated, that is Easter and Good Friday.

Id. at 13. Plaintiff asks the Court for

> an Injunction to stop, restrain and prevent Allison Carolyn Rattray (maiden name Smith), Corporate Secretary and Legal Counsel, CIBC FirstCarribean Jamaica; her husband, Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica, King Street, Kingston, Jamaica, West Indies Deryke Smith, her brother; Lacelles Smith retired lecturer The University of the West Indies, Jamaica, West Indies; and the Rhoda Ford children and others from practicing their religion in a way that results in the death or harm or injury of The Rights of The Plaintiff and or the mother of The Plaintiff and or the siblings of The Plaintiff; and or any member of The Public, which includes anyone in the global community.

Id. at 14.

As for plaintiff's causes of action, plaintiff lists:

> forced religion imposed on The Plaintiff whom is the employee by The Employer, CIBC Limited. The Forced Religion imposed on Myrna Althia Alicia Walker [ ] to kill innocent Persons. The daily murders of innocent Persons is used to supply the demands of the global organ Donor list. The staff is Allison Carolyn Rattray.

***4** Dkt. No. 1 at 69. As for a second cause of action is

> employment discrimination – I chose a career path to be an Attorney-At-Law. Allison Carolyn Rattray (maiden name Smith) my (former) then manager at CIBC had be fired; told me that (1) I am not worthy to be an Attorney-at-Law because of my Race (2) I was not worthy to be in the same Profession as her. She has been defaming my character ever since.

Id. at 70. Third cause of action is listed as employment discrimination - compensation: denied increases in my salary verbally communicated to be by Ms. Cherlyn Blackman my Senior Manager of 3% in 2004; Denied Promotion communicated to be my Human Resources Regional Director, Jerime Cjnttihs-Bell; denied fringe benefits that accompanied my five (5) CIBC Achievers awards – my salary was split and part paid to my aunt.” Id. In the prayer for relief, plaintiff requests:

> (1) an Injunction(s) for Criminal Indictment(s) of Allison Carolyn (Smith) Rattray, Corporate Secretary and Legal Counsel CIBC for her forced Prostitution of The Plaintiff and Others; (2)An Injunction to prevent and stop all Prostitution or abuse of The Plaintiff; (3) Restitution(s) by CIBC for lost Incomes and fringe benefits[; and] (4) Job Reference letter from CIBC and an apology and my land Title Deed.

Id. at 71.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**B. Analysis**

First, plaintiff's complaint fails to meet the pleading requirements of Rules 8 and 10. Her complaint does not present a short and plain statement of the claim showing that she is entitled to relief. FED. R. CIV. P. 8. Further, she does not present her claims in numbered paragraphs, limited to one "circumstance" per paragraph. FED. R. CIV. P. 10. Instead, her complaint is a lengthy, disjointed, difficult to follow narrative. Her complaint clearly "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales, 167 F.R.D. at 355.

Second, plaintiff's claims, insofar as she seeks to bring them under Title VII are (1) barred by the statute of limitations, and (2) fail to state a claim for employment discrimination in violation of Title VII. [3] To the extent plaintiff suggests that she was discriminated against in violation of Title VII insofar as she was told that she was inadequate due to her race or denied promised promotions because of her race, dkt. no. 1 at 70, even if plaintiff could provide additional factual support and clarification for the alleged discrimination, plaintiff provides that the alleged discrimination occurred as early as 1995 until 2004, and would be beyond the statute of limitations of Title VII. Indeed, plaintiff's entire employment with defendant occurred outside of the statute of limitations as she suggests that her employment began in January 1995 and that she was terminated in March 2009. Dkt. No. 1 at 52-53. Thus, the complained-of actions occurred more than 300 days prior to when plaintiff appears to have filed a complaint with the EEOC. See Gunning v. New York State Just. Ctr. for Prot. of People with Special Needs, No. 1:19-CV-1446 (GLS/CFH), 2020 WL 5203673, at *3 (N.D.N.Y. Sept. 1, 2020) ("Title VII's statute of limitations bars claims based upon events that occurred more than 300 days prior to filing a charge of discrimination with a state or local employment agency, and, therefore, "[a] plaintiff may bring a claim under Title VII only for acts of discrimination that occurred within the statutory period set by 42 U.S.C. § 2000e–5(e)(1).") (quoting Patterson v. Cnty. of Oneida, 375 F.3d 206, 220 (2d Cir. 2004)). The undersigned notes that plaintiff does not indicate when she filed a complaint with the EEOC. However, she submits the EEOC's dismissal letter, dated September 10, 2020, which states that plaintiff did not timely file a complaint with the EEOC. Dkt. No. 1-1. As plaintiff likely filed her EEOC complaint in 2020, [4] appears to have been last employed by defendant in 2009, and complains of alleged employment discrimination occurring as early as 1995, her filing of an EEOC complaint in 2020 is clearly more than 300 days after the alleged discrimination occurred. Thus, any cognizable Title VII claims arising out of her employment with defendant are barred by the statute of limitations.

3 A plaintiff establishes "a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class." Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005) overruled on other grounds Zarda v. Altitude Express, Inc., 883 F.3d 100 (2d Cir. 2018).

4 As the EEOC dismissal notice is dated September 10, 2020, the Court makes the reasonable inference that plaintiff filed her EEOC complaint some time in 2020.

***5** However, even if the statute of limitations was not an issue, plaintiff's claims still must fail because plaintiff's claims fail to state any cognizable legal claim under the United States Constitution, federal statute, or state law, and ultimately fails establish this Court's jurisdiction under federal question or diversity jurisdiction. [5] Plaintiff makes several disjointed, confusing claims about being sold as a prostitute against her will by defendant's employees and other nonparties, defendant's employees and others murdering innocent people, defendant's employees drinking plaintiff's blood, and being stalked and prostituted by various officials from Jamaica and employees of defendant's company. See generally dkt. nos. 1, 4, 6, 7. Plaintiff makes several allegations against her former supervisor, Ms. Rattray, and says the various physical wrongdoings Ms. Rattray committed against plaintiff were all due to "The employment agreement between The Plaintiff and CIBC FirstCarribean Jamaica." Dkt. No. 1 at 60-61. Although plaintiff's submissions seem to suggest that she was employed by defendant at some point in time, and that a supervisor told her she could not be a lawyer due to her race and denied promised salary increases for unclear reasons, nothing

about the factual allegations pleadings suggest that she presents a valid employment discrimination claim under Title VII or any other statute.

5 Even if this Court were to assess this case as seeking to proceed under diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), the plaintiff has also failed to set forth a cognizable state law claim. Scherer v. Equitable Life Assur. Soc'y of the United States, 347 F.3d 394, 397 (2d Cir. 2003) (quoting 28 U.S.C. § 1332(a)) (noting that diversity jurisdiction "confers original jurisdiction on the federal district courts with respect to 'all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States.' ").

The Court is at a loss as to how the allegations in the complaint relate to a valid employment discrimination claim or any valid legal claim. Plaintiff presents a difficult to comprehend series of allegations against various individuals – many of whose connections to her apparent former employer is difficult, if not impossible, to comprehend – who she alleges forced her into prostitution, performed plastic surgeries on her against her will, installed "spying devices" into plaintiff's body, forced her to undergo various injections, and involved plaintiff in murder scheme that is somehow related to her Easter birthday. See Dkt. No. 1 at 56-60. Plaintiff also sets forth unexplained allegations that appear to involve Ms. Rattray and others, such as "an abuse of a veteran of the United States Army by the said Allison Carolyn Rattray" (dkt. no. 1 at 54). Plaintiff submits dozens of pages of exhibits and supplements that appear to relate to cases filed in other courts, orders of protection obtained in other courts, unemployment insurance issues, police reports, and documents sent to various federal agencies. See dkt. nos. 4, 5, 6, 7. The relevance of this deluge of documents is entirely unclear.

Further, to the extent plaintiff requests injunctions (dkt. no. 1 at 71) to prevent defendant's employees from prostituting or harming plaintiff or seeks some kind of prosecution of defendant's employees for criminal conduct, this Court does not have authority to direct persons to cease engaging in illegal activity through a civil suit as it is not a law enforcement agency. It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction. See generally Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); McFadden v. Ortiz, 5:12-CV-1244(MAD/ATB), 2013 WL 1789593 (N.D.N.Y. Apr. 26, 2013) (noting that there is no private right of action to enforce either state or federal criminal statutes).

Next, plaintiff files an "emergency motion" for the Death Penalty,[6] which appears to ask the United States Supreme Court to enforce the death penalty against various individuals who plaintiff contends engaged in "drug assisted surgeries on The Plaintiff herein to induce The Coronavirus ahead of the proposed mass vaccination of the US public, which is set for May 1, 2021[,]" implanting maggots into plaintiff's bones, releasing poisons into plaintiff's body, "install[ing] television" and "Netflix Television" into plaintiff's eye and spinal cord, "alter[ing]" plaintiff's "joints to make [her] walk in [sic] all four" to be "displayed as a naked dog on a lease [sic]," and other similar allegations. See Dkt. No. 5. As discussed above, this Court does not have the authority or jurisdiction to sua sponte impose the death penalty in a civil case nor can it seek the criminal prosecution of individuals or at the request of a plaintiff or decide the ultimate punishment if convicted after a criminal trial.

6 This "emergency motion" notes that it is presented to the United States Supreme Court, but contains a caption including this Court. It is unclear if this is a document plaintiff intends to submit before this Court, or before the United States Supreme Court. See dkt. no. 5.

***6** Generally, in cases involving pro se plaintiffs, a court should not dismiss a complaint without granting leave to amend "at least once" "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); see also Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district

court may sua sponte dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). “Legal frivolity ... occurs where ‘the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.’ ” Aguilar v. United States, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) (“[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.”); Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (“[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.”). Thus, although the Court must show special solicitude to pro se litigants, see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and is to exercise “extreme caution ... in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ...” Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the Court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.

Even if, arguendo, the statute of limitations was not a jurisdictional bar and plaintiff had been able to establish this Court's jurisdiction, the undersigned would still recommend dismissal with prejudice on its initial review as plaintiff's complaint is “factually frivolous.” See Bennett v. Mnuchin, 6:20-CV-243 (BKS/TWD), 2020 WL 1674068 (citing Denton v. Hernandez, 504 U.S. 25, 32-33 (1992)) (holding that a court may dismiss a factually frivolous claim when the allegations are “clearly baseless,” including claims that “describ[e] fantastic or delusional scenarios.”); Brown v. New York State Educ. Dept., 8:18-CV-169 (TJM/CFH), 2018 WL 1865547, at *2 (N.D.N.Y. Mar. 19, 2018) (dismissing pro se plaintiff's complaint with prejudice where “it is clear that no federal claim can be stated on these facts[.]”). Accordingly, the undersigned recommends dismissal with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be clearly futile.

## IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be granted for purposes of filing only; and it is

**RECOMMENDED**, that plaintiff's complaint (dkt. no. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that plaintiff's “Emergency Motion for the Death Penalty” (dkt. no. 5) be **DISMISSED**; and it is further

**RECOMMENDED**, that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be **DISMISSED AS MOOT**.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has FOURTEEN (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[7]

7 If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that

prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3518439

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3204860
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Myrna Althia Alicia WALKER, Plaintiff,
v.
CIBC LIMITED, Defendant.

1:20-CV-1337 (TJM/CFH)
|
Signed 07/29/2021

**Attorneys and Law Firms**

Myrna Althia Alicia Walker, Albany, NY, Pro Se.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior United States District Judge

## I. INTRODUCTION

***1** This case was before the Hon. Christian F. Hummel, United States Magistrate Judge, for an initial review of plaintiff's complaint and other filings pursuant to 28 U.S.C. § 1915(e)(2)(B). Judge Hummel recommends that plaintiff's complaint (dkt. no. 1) be dismissed with prejudice; that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be dismissed; and that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be dismissed as moot. *See* April 13, 2021 Report-Recommendation & Order, dkt. no. 10. Plaintiff did not file objections directed to Judge Hummel's recommendations, and the time to do so has expired. Plaintiff did, however, file an amended complaint. For the reasons that follow, the Court adopts Judge Hummel's recommendations, and independently reviews plaintiff's amended complaint and finds it fails to assert viable causes of action.

## II. DISCUSSION

### a. Complaint

As Judge Hummel explains, plaintiff *pro se* Myrna Althia Alicia Walker purported to commence this action on October 28, 2020, by submitting a complaint and application to proceed in forma pauperis ("IFP") in lieu of paying the Court's filing fee. *See* Dkt. No. 1 ("Compl."); Dkt. No. 2. On March 15, 2021, plaintiff submitted a supplement to her complaint. Dkt. No. 4. On April 6, 2021, plaintiff submitted an additional filing entitled "Emergency Petition for the Death Penalty Against Adethia Keisha Fitten and Others on the Principle Found in the Law of Necessity." Dkt. No. 5. On April 7, 2021, plaintiff submitted an additional 86 pages to supplement to her complaint. Dkt. Nos. 6, 7. On April 8, 2021, plaintiff submitted additional exhibits and a letter requesting to file those exhibits under seal. Dkt. No. 8.

Plaintiff purports to bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000, *et seq.* On her form Title VII complaint, she indicates that defendant discriminated against her due to her race and color, religion, sex, and "my date of birth – Easter." Compl. at 2. Plaintiff further indicates, through checking the boxes on the form complaint, that defendant terminated her employment, failed to promote, engaged in unequal terms and conditions of employment, retaliated against her, and "forced prostitution; [i]dentity theft, which is used to do Bank frauds & Poisonings." *Id.* Plaintiff's complaint, inclusive of exhibits, is 158 pages long. Dkt. No. 1. The exhibits include an 80-page letter relating to apparent visa fraud that plaintiff sent to the US Department of Justice, the United States Department of Homeland Security, Immigration and Customs

Enforcement, and the Federal Bureau of Investigation, as well as an incident report dated May 29, 2019, regarding an apparent rape of plaintiff.

The supplement plaintiff filed on March 15, 2021 is 112 pages long. Dkt. No. 4. The supplement appears to be filings from a complaint plaintiff had before the Supreme Court, Rensselaer County against Unity House of Troy and Joseph Posa. *Id.* The “emergency motion,” filed on April 4, 2021, is 22 pages long, with 70 additional pages of exhibits. Dkt. No. 5. These exhibits are (1) various transfer orders and orders of protection plaintiff either sought or obtained against various individuals in family court proceedings in different counties (dkt. no. 5-1); (2) a residential lease agreement from July 2018, for a property in Troy, New York, with landlord Joseph Posa (dkt. no. 5-2); (3) records from a proceeding before the Rensselaer County Supreme Court in a case captioned Myrna Althia Alicia Walker vs. “Change of Name” Heidi Elizabeth Zuach (dkt. no. 5-3); and (4) a lease agreement dated May 2, 2017, between Capital Group Management LLC and plaintiff for a property in Troy, New York (dkt. no. 5-4). The submission filed on April 7, 2021, is 59 pages long and includes various orders of protection, a USPS tracking number report, a Unity House Domestic Violence Services Transitional Housing Program Handbook, a form from the Rensselaer County Department of Social Services, earnings statements, a New York State incident report from 2018, an eviction notice, a letter from the Unity House Transitional Housing program, a “notice” letter, and a “birth registration” form. Dkt. No. 6-6. The exhibits filed on April 7, 2021 appear to be letters plaintiff sent to the New York State Department of Labor, United States Department of Homeland Security, Immigration and Customs Enforcement, and the EEOC, apparently related to “pandemic unemployment compensation benefits.” *See* dkt. no. 7.

***2** Plaintiff's complaint discusses Allison Carolyn Rattray, allegedly the Corporate Secretary and Legal Counsel of defendant CIBC First Caribbean International Bank (Jamaica) Limited. Dkt. No. 1 at 3. Plaintiff contends that Ms. Rattray kills unidentified people “with her married name” and drinks plaintiff's blood. *Id.* Apparently, plaintiff contends that Ms. Rattray is or was her “employer” who “uses the drinking blood of the employee to kill employing the employment agreement and the incomes paid by direct deposit as the consideration for the blood that is drank before the killings and the doomings if [sic] innocent persons.” *Id.* at 4. Plaintiff also appears to suggest that Ms. Rattray and her husband, “Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica,” forced plaintiff to use “illegal psychotropic medicines,” cocaine, and alcohol. *Id.* at 5. Plaintiff refers to an employment agreement she signed with Ms. Rattray in 1995 and appears to suggest that since that date, Ms. Rattray “has been stalking the Plaintiff inside her bedroom, bathroom mirror, on her cell phone from 1995 even until today October 20, 2020 even the bathroom staples [sic] has visual and audio devices inside of them.” *Id.* at 6. The Complaint then appears to proceed to explain why Ms. Rattray and her various family members are carrying out unspecified killings. *See generally* Dkt. No. 1. Plaintiff further suggests that through her employment with defendant, both defendant and the Commercial Division of the Supreme Court of Jamaica

> has been using me as a sex doll; as sex services; as sex product also incorporating The University of the West Indies Hospital to do surgeries; using illegal force of The Jamaican police; using the illegal Force of the Jamaican Army; using the illegal force of the Jamaican parliament to have men from any where have sex with The Plaintiff because The Plaintiff was born on the day the crucifixion was celebrated, that is Easter and Good Friday.

*Id.* at 13. Plaintiff asks the Court for

> an Injunction to stop, restrain and prevent Allison Carolyn Rattray (maiden name Smith), Corporate Secretary and Legal Counsel, CIBC First Carribean Jamaica; her husband, Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica, King Street, Kingston, Jamaica, West Indies Deryke Smith, her brother; Lacelles Smith retired lecturer The University of the West Indies, Jamaica, West Indies; and the Rhoda Ford children and others from practicing their religion in a way that

> results in the death or harm or injury of The Rights of The Plaintiff and or the mother of The Plaintiff and or the siblings of The Plaintiff; and or any member of The Public, which includes anyone in the global community.

*Id.* at 14.

As for plaintiff's first cause of action, plaintiff lists:

> forced religion imposed on The Plaintiff whom is the employee by The Employer, CIBC Limited. The Forced Religion imposed on Myrna Althia Alicia Walker [ ] to kill innocent Persons. The daily murders of innocent Persons is used to supply the demands of the global organ Donor list. The staff is Allison Carolyn Rattray.

Dkt. No. 1 at 69. As for a second cause of action is

> employment discrimination – I chose a career path to be an Attorney-At-Law. Allison Carolyn Rattray (maiden name Smith) my (former) then manager at CIBC had me fired; told me that (1) I am not worthy to be an Attorney-at-Law because of my Race (2) I was not worthy to be in the same Profession as her. She has been defaming my character ever since.

*Id.* at 70. The third cause of action is listed as

> employment discrimination - compensation: denied increases in my salary verbally communicated to me by Ms. Cherlyn Blackman my Senior Manager of 3% in 2004; Denied Promotion communicated to me by Human Resources Regional Director, Jerime Cjnttihs-Bell; denied fringe benefits that accompanied my five (5) CIBC Achievers awards – my salary was split and part paid to my aunt.

*Id.* In the prayer for relief, plaintiff requests:

> (1) an Injunction(s) for Criminal Indictment(s) of Allison Carolyn (Smith) Rattray, Corporate Secretary and Legal Counsel CIBC for her forced Prostitution of The Plaintiff and Others; (2) An Injunction to prevent and stop all Prostitution or abuse of The Plaintiff; (3) Restitution(s) by CIBC for lost Incomes and fringe benefits[; and] (4) Job Reference letter from CIBC and an apology and my land Title Deed.

*Id.* at 71.

Judge Hummel found (a) that plaintiff's complaint fails to meet the pleading requirements of Fed. R. Civ. P. 8 and 10, *see* Dkt. 10 at 8-9; (b) plaintiff's claims under Title VII (1) are barred by the statute of limitations, and (2) fail to state a claim for employment discrimination in violation of Title VII, *see id.* at 9-10; and (c) apart from the Title VII claims, "plaintiff's claims fail to state

any cognizable legal claim under the United States Constitution, federal statute, or state law, and ultimately fails [to] establish this Court's jurisdiction under federal question or diversity jurisdiction." *Id.* at 10. Judge Hummel indicated that he was

> ***3** at a loss as to how the allegations in the complaint relate to a valid employment discrimination claim or any valid legal claim. Plaintiff presents a difficult to comprehend series of allegations against various individuals – many of whose connections to her apparent former employer is difficult, if not impossible, to comprehend – who she alleges forced her into prostitution, performed plastic surgeries on her against her will, installed "spying devices" into plaintiff's body, forced her to undergo various injections, and involved plaintiff in a murder scheme that is somehow related to her Easter birthday. *See* Dkt. No. 1 at 56-60. Plaintiff also sets forth unexplained allegations that appear to involve Ms. Rattray and others, such as "an abuse of a veteran of the United States Army by the said Allison Carolyn Rattray" (dkt. no. 1 at 54). Plaintiff submits dozens of pages of exhibits and supplements that appear to relate to cases filed in other courts, orders of protection obtained in other courts, unemployment insurance issues, police reports, and documents sent to various federal agencies. See dkt. nos. 4, 5, 6, 7. The relevance of this deluge of documents is entirely unclear.

*Id.* at 11.

Judge Hummel also concluded that to the extent plaintiff requests injunctions (dkt. no. 1 at 71) to prevent defendant's employees from prostituting or harming plaintiff or seeks some kind of prosecution of defendant's employees for criminal conduct, this Court does not have authority to direct persons to cease engaging in illegal activity through a civil suit as it is not a law enforcement agency. *Id.* at 11-12.

As to plaintiff's "emergency motion" for the Death Penalty, Judge Hummel found that it appears to ask the United States Supreme Court to enforce the death penalty against various individuals who plaintiff contends engaged in "drug assisted surgeries on The Plaintiff herein to induce The Coronavirus ahead of the proposed mass vaccination of the US public, which is set for May 1, 2021[,]" implanting maggots into plaintiff's bones, releasing poisons into plaintiff's body, "install[ing] television" and "Netflix Television" into plaintiff's eye and spinal cord, "alter[ing]" plaintiff's "joints to make [her] walk in [sic] all four" to be "displayed as a naked dog on a lease [sic]," and other similar allegations. *See* Dkt. No. 5. Judge Hummel concluded that "this Court does not have the authority or jurisdiction to *sua sponte* impose the death penalty in a civil case nor can it seek the criminal prosecution of individuals or at the request of a plaintiff or decide the ultimate punishment if convicted after a criminal trial." Dkt. 10 at 12.

Judge Hummel concluded that although the Court must show special solicitude to *pro se* litigants, and is to exercise "extreme caution ... in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." *id.* at 14 (quoting *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted)), the Court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis. Id.* Judge Hummel concluded:

> Even if, *arguendo*, the statute of limitations was not a jurisdictional bar and plaintiff had been able to establish this Court's jurisdiction, the undersigned would still recommend dismissal with prejudice on its initial review as plaintiff's complaint is "factually frivolous." *See Bennett v. Mnuchin*, 6:20-CV-243 (BKS/TWD), 2020 WL 1674068 (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)) (holding that a court may dismiss a factually frivolous claim when the allegations are "clearly baseless," including claims that "describ[e] fantastic or delusional scenarios."); *Brown v. New York State Educ. Dept.*, 8:18-CV-169 (TJM/CFH), 2018 WL 1865547, at *2 (N.D.N.Y. Mar. 19, 2018) (dismissing *pro se* plaintiff's complaint with prejudice where "it is clear that no federal claim can be stated on these facts[.]"). Accordingly, the undersigned recommends dismissal with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be clearly futile.

***4** *Id.* at 14. As indicated above, Judge Hummel also recommends that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be dismissed, and that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be dismissed as moot. *Id.* at 15.

After examining the record, this Court has determined that the recommendations in the Report-Recommendation and Order are not subject to attack for plain error or manifest injustice. Further, even if plaintiff's amended complaint is treated as an objection, the Court has completed a *de novo* review and has determined to adopt Magistrate Judge Hummel's recommendations for the reasons stated in his report.

**b. Amended Complaint**

As indicated, plaintiff filed an amended complaint after Judge Hummel recommended that the complaint be dismissed with prejudice. After a review of the amended complaint, the Court finds that it too must be dismissed with prejudice.

Plaintiff's amended complaint is a form Title VII complaint. *See* dkt. no. 11. She indicates that the defendant is "CIBC Limited/ Michael Capatide CEO CIBC." *Id.* at ¶ 3(b). [1] Plaintiff checks the boxes indicating that the defendant discriminated against her on account of her "race or color," "religion," "sex (or sexual harassment)," "national origin," and "other" indicating on the line that follows: "my right to marry; my right to life; my right to work and provide for my daily living expenses." *Id.* at ¶ 6. Where plaintiff is asked to indicate what the complained-of conduct involves, she checked the boxes for "failure to employ," "termination of employment," "failure to promote," "unequal terms and conditions of employment," "retaliation," and "other acts as specified below" after which she writes: "I am being sex trafficked by CIBC First Caribbean staff in lieu of my salary." *Id.* at ¶ 7. In the section of the amended complaint asking for the facts underlying her claims, plaintiff asserts she is being sex trafficked because she was born on Easter and that the sex trafficking is in lieu of her salary paid to her by CIBC First Caribbean Jamaica." *Id.* ¶ 8. She also asserts that "the force" of the Jamaican Police, the Jamaican Judiciary, the Jamaican Hospital, and the University of the West Indies are conspiring with her "Walker relatives used to commit crimes with my identity using identity theft of Myrna Suzette Walker employed by Jamaican government Judge Barrington Andrew Rattray & Allison Carolyn Rattray." *Id.* In addition, she asserts that "Adethia Keisha Fitten is physically cutting me to create presumed consent for the crimes organized by Judge Barrington Andrew Rattray." *Id.*

1 At paragraph 3(a) asking to identify the defendant, plaintiff writes: "Not Applicable"

The First Cause of Action alleges "forced organized criminality using the salary that was paid to the plaintiff by CIBC First Caribbean Jamaica January 1, 1995 to March 28, 2009." It also asserts that Myrna Suzette Walker "is a thief," and that "Allison Carolyn Rattray ... hired Myrna Suzette Walker and her five (5) children and Adethia Keisha Fitten to steal and to say that the stealing was done by the plaintiff." Plaintiff also appears to indicate that "to do the stealing," Myrna Suzette Walker "and others" repeatedly physically injure plaintiff. As discussed by Judge Hummel, these allegations do not provide plaintiff with a timely Title VII cause of action, *see, e.g.,* Am. Compl. attach. 4, dkt. no. 11-4 at 1, [2] nor do they provide a basis for the relief plaintiff seeks. *See* Dkt. 11, at 5. [3]

2 Dkt. no. 11-4 is a letter from Maureen Kielt, Director of the EEOC Buffalo Local Office to plaintiff in the matter of *Walker v. CIBC* confirming that plaintiff indicated that her "last date of harmed occurred on March 24, 2009, when [she] was terminated," thus making her EEOC administrative claim against CIBC untimely. Dkt. No. 11-4 at 1.

3 In the Prayer for Relief, plaintiff requests the Court to grant the following relief:

1. The plaintiff <u>do</u> <u>not</u> [sic] want to be a party to the religious killing business of Myrna Suzette Walker; her five children; and CIBC First Caribbean Jamaica staff, Allison Carolyn Rattray and her husband Judge Barrington Andrew Rattray, Supreme Court of Jamaica;
2. The plaintiff do not [sic] want cocaine nor any thing to ingest from anyone, by force or otherwise.
3. The plaintiff wants full restitution socially, physically, professionally.

Dkt. 11, at 5 (emphasis in original).

***5** The Second Cause of Action asserts violations of the "Human Rights Act of 1998." The Human Rights Act of 1998 appears to be a law or act of Parliament in the United Kingdom. *See Brady v. Wks. Med. Ctr.*, No. 19-CV-00655-SM, 2019 WL 6529870, at *2 (D.N.H. Nov. 12, 2019)("A law in effect in the United Kingdom bears that title.")(citing Human Rights Act 1998, ch.

42, http://www.legislation.gov.uk/ukpga/1998/42/contents), *report and recommendation approved*, No. 19-CV-655-SM, 2019 WL 6529459 (D.N.H. Dec. 4, 2019); *Simpson v. Dauphin Cty. Hous. Auth.*, No. 1:16-CV-01747, 2017 WL 2375702, at *2, n. 4 (M.D. Pa. Apr. 26, 2017) ("Simpson also references a 'Human Rights Act of 1998,' which as best we can tell refers to an Act of Parliament of the United Kingdom, not applicable in this jurisdiction."), *report and recommendation adopted*, No. 1:16-CV-1747, 2017 WL 2362510 (M.D. Pa. May 31, 2017). The Human Rights Act of 1998 does not provide plaintiff with a viable cause of actions against the defendant for any events occurring in the Northern District of New York over which this Court would have jurisdiction. *See Brady*, 2019 WL 6529870, at *2.

The Third Cause of Action is confusing but appears to be a claim seeking unpaid wages. *See* dkt. no. 11 at 4 (stating at the start of Third Cause of Action: "The right to my paycheck."). Plaintiff asserts that her aunt Myrna Suzette Walker "assisted by CIBC First Caribbean staff Allison Carolyn Rattray has been falsely selling me as a whore in lieu of my current income(s) from JC Penney, Aerotek, Walmart, Fidelis Care and more." However, Myrna Suzette Walker, Allison Carolyn Rattray, JC Penney, Aerotek, Walmart, or Fidelis Care are not defendants in this action. Further, plaintiff does not assert when it was that she worked at JC Penney, Aerotek, Walmart, or Fidelis Care, or when or where it was that Myrna Suzette Walker and Allison Carolyn Rattray purportedly took actions preventing plaintiff from receiving her wages from these employers. The claim in this regard fails to assert a viable cause of action under Title VII. In addition, in nearly incomprehensible fashion plaintiff ends the Third Cause of Action by asserting: "The rapes of me by co-workers is [sic] recorded and published. Walmart staff a [sic] man named Donnell she [sic] gave permission to live in my apartment as well as Fidelis Care Health Insurance staff- Rashid Rardon." These allegations fail to provide a sufficient basis for the Court to discern any viable cause of action under Title VII or any other law or statute over which the Court would have jurisdiction.

Accordingly, for the reasons set forth above plaintiff's amended complaint will be dismissed. Because the allegations in the amended complaint are factually frivolous, and because plaintiff filed an amended complaint that did not cure the pleading defects pointed out by Judge Hummel, dismissal will be with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be futile.

### III. CONCLUSION

For the reasons discussed above, the Court **ACCEPTS AND ADOPTS** Judge Hummel's recommendations in the April 13, 2021 Report-Recommendation & Order, dkt. no. 10. Thus, it is hereby

**ORDERED** that plaintiff's complaint (dkt. No. 1) is **DISMISSED with prejudice**; and it is further

**ORDERED** that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) is **DENIED and DISMISSED**; and it is further

**ORDERED** that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) is **DENIED and DISMISSED as moot**.

Based on the Court's review of the amended complaint, it is hereby

**ORDERED** that plaintiff's amended complaint (dkt. No. 11) is **DISMISSED with prejudice**.

The Clerk of the Court may mark this file as closed.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3204860

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 2231223
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Luis Angel SALAMAN, Plaintiff,
v.
CITY OF NEW HAVEN, et al., Defendants.

CASE NO. 3:19-CV-577 (MPS)
|
Signed 05/23/2019

**Attorneys and Law Firms**

Joseph Edward Gasser, Wiggin & Dana, New Haven, CT, for Plaintiff.

**INITIAL REVIEW ORDER**

Michael P. Shea, United States District Judge

***1** On April 17, 2019, the plaintiff, Luis Angel Salaman, a state prisoner currently confined at the Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, filed a civil complaint *pro se* and *in forma pauperis* against the City of New Haven, Connecticut, the New Haven Police Department ("NHPD"), the State's Attorney's Office for the judicial district of New Haven, and nine NHPD officials in their individual and official capacities: Chief Anthony Campbell, Officer James Murcko, Officer Joseph Galvan, Officer Garry Monk, Detective Luis Lopez, Sergeant Sean Maher, Sergeant Rose Dell, Sergeant Carlos Maldonado, and Lieutenant Racheal Cain. ECF No. 1, ¶¶ 4-16. The plaintiff raises a number of constitutional claims stemming from his arrest in New Haven on April 22, 2016. *Id.* at ¶¶ 100-09. He seeks monetary, injunctive, and declaratory relief. *Id.* at ¶¶ 110-16. For the following reasons, the complaint is dismissed in part.

I. Standard of Review

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic*, 550 U.S. at 556). Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.' " *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II. Factual Allegations

On April 22, 2016, at around 7:00 p.m., the plaintiff was traveling west on Putnam Street in New Haven in his red Saab. ECF No. 1, ¶¶ 17-18. When he stopped at a stop sign at the intersection of Putnam Street and Howard Avenue, he noticed a police cruiser operated by Officer Murcko parked on a driveway on Howard Street. *Id.* at ¶ 17. When the plaintiff proceeded onto

Howard Street from the intersection, he noticed Murcko following him in his cruiser. *Id.* at ¶ 18. Murcko activated his lights and siren, and the plaintiff pulled over on Liberty Street. *Id.* at ¶ 19. He sat in his car for several minutes, but Murcko did not exit his cruiser. *Id.* The plaintiff then noticed another police cruiser driven by Officers Monk and Galvan approaching him at an alarming speed. *Id.* at ¶¶ 19-20. The plaintiff did not feel safe and sped off in fear that the officers were going to attack him. *Id.* at ¶ 21. The plaintiff and the officers then engaged in a pursuit throughout the streets of New Haven. *Id.* at ¶¶ 22-26. At various times, the police cruisers crashed into the plaintiff's Saab and caused him to drive into the oncoming traffic lane. *Id.* at ¶¶ 23-25. The plaintiff feared that the officers were trying to kill him. *Id.* at ¶ 24. Eventually, Murcko crashed his cruiser into the rear left side of the plaintiff's Saab, causing it to spin out of control and come to a stop on Long Wharf Drive. *Id.* at ¶¶ 26-27.

***2** After the Saab had come to a stop, the officers ordered the plaintiff at gunpoint to exit his vehicle. ECF No. 1, ¶ 27. The plaintiff complied by exiting his vehicle and lying face down on the ground. *Id.* Galvan placed him in handcuffs, searched his person, and then placed him in Murcko's police cruiser. *Id.* At the time, the plaintiff was in a lot of pain and had difficulty breathing. *Id.* As he sat down in the cruiser, the plaintiff complained to another officer that that he was in pain and could not breathe. *Id.* at ¶ 28. He then heard Murcko say, "I should mace you, you motherfucker," and Murcko slammed the cruiser door. *Id.* Murcko then opened his driver door and closed all of the windows in the cruiser, which caused the plaintiff to become lightheaded. *Id.*

The plaintiff again complained to an ambulance technician that he was not feeling well and had difficulty breathing, and the technician cracked open the windows in the cruiser. ECF No. 1, ¶ 29. A short time later, however, Murcko closed the windows again. *Id.* at ¶ 30. When the technician attempted to open the windows a second time, Murcko instructed him not to touch the windows, but the technician insisted that they take the plaintiff out of the car. *Id.* Murcko then became upset, opened the back door, and told the plaintiff to get out of the car. *Id.*

Murcko walked the plaintiff to a nearby intersection where Sergeant Maher was present. ECF No. 1, ¶ 31. He then searched the plaintiff a second time and, during the pat down, grabbed the plaintiff's testicles and squeezed them so hard that it caused the plaintiff to cry out loud in pain. *Id.* Murcko said, "What's this?" and the plaintiff responded, "Why [are] you doing this? You can't touch me there at all." *Id.* Murcko told him to "shut the fuck up" and then instructed the ambulance technician to take him away. *Id.*

The plaintiff was taken to Yale New Haven Hospital, where he was evaluated and given medical treatment, and then transported to the New Haven police station. ECF No. 1, ¶ 33. He was released on bail that same night. *Id.*

On April 25, the plaintiff obtained a ten-page police report written by Galvan and noticed several factual inaccuracies. ECF No. 1, ¶¶ 34-37. Four days later, on April 29, the plaintiff appeared in state court for a preliminary hearing. *Id.* at ¶ 38. There, he filed a motion for discovery of any video footage taken during the arrest, including traffic camera footage, and the court ordered the State to preserve any such footage. *Id.* at ¶¶ 39, 44. The plaintiff asked his attorney to review the footage, which he believed would show that the officers were untruthful in their account of the pursuit. *Id.* at ¶¶ 41-44. The plaintiff later fired his attorney, and the court appointed Special Public Defender Beth A. Merkin to represent him. *Id.* at ¶ 46. He briefed Merkin on the court's order for the preservation of the videos and told her that he believed the NHPD officers were targeting him. *Id.* at ¶ 47.

On October 7, 2016, the plaintiff filed a civilian complaint with the NHPD Internal Affairs Unit for police misconduct during his arrest. ECF No. 1, ¶ 42. He received a letter on October 19 from Lieutenant Cain stating that an investigation into his allegations had been opened, and that Sergeant Maldonado would be in contact with the plaintiff regarding its status, but the plaintiff was never contacted regarding his complaint. *Id.*

On December 19, 2016, the plaintiff obtained from Merkin the full police reports from Officers Galvan and Murcko and a Uniform Police Crash Report filed by Sergeant Maher. ECF No. 1, ¶ 48. Again, the plaintiff noticed several untruthful statements in the reports. *See id.* at ¶¶ 49-59.

On January 9, 2017, the plaintiff posted bail and was released from custody. ECF No. 1, ¶ 61. A short time later, he went to the NHPD to check on the status of his civilian complaint because no one from the NHPD had ever contacted or interviewed him. *Id.* A clerk there told him that Lieutenant Cain would be contacting him, but that never occurred. *Id.* The plaintiff tried to contact Cain the following month but was unsuccessful. *Id.* at ¶ 62. When he went to the NHPD a second time to check on the status of the complaint, the clerk there handed him a letter written by Maldonado stating that the Internal Affairs Unit was closing his complaint because the claims stated therein were unfounded, and the Unit determined that no policies were violated. *Id.*

***3** The plaintiff informed Attorney Merkin of the outcome of the civilian complaint. ECF No. 1, ¶ 64. During their discussions, the plaintiff told Merkin that he recalled Officer Galvan waving something in his hand on the night of his arrest and shouting, “Call Lopez. Tell him we got him.” *Id.* at ¶ 67. Merkin also handed the plaintiff another summary report written by Maldonado in which he stated that he had reviewed the police radio transmission logs from the night of the arrest. *Id.* at ¶¶ 65, 68. In one of those logs, Sergeant Maher asks why they were pursuing the plaintiff's car, and someone responds that it was related to a drug investigation and that Detective Lopez “wants him.” *Id.* at ¶ 71. In his police report from April 22, 2016, Officer Galvan stated that the officers were pursuing the plaintiff because his Saab “did not have a proper illuminated marker plate,” in violation of Connecticut General Statutes § 14-18, but omitted any reference to a drug investigation. *Id.* at ¶¶ 73-74. Maldonado also stated in his report that Lopez had an interest in the plaintiff's vehicle as part of a narcotics investigation. *Id.* at ¶ 76.

The plaintiff believes that Lopez had targeted him for arrest on April 22, 2016 because (1) at that time, he was awaiting trial for an unrelated criminal case from 2014 in which Lopez was the arresting officer, and (2) he had previously dated Lopez's ex-girlfriend. ECF No. 1, ¶ 77. The plaintiff believes that Lopez directed Murcko and Galvan to attack him on April 22, 2016. *Id.* at ¶ 78.

The plaintiff later learned from Sergeant Dell, who specializes in accident reconstruction, that traffic camera footage is only preserved for two weeks, and because the plaintiff did not file his civilian complaint until October 2016, there was no available footage of the arrest. ECF No. 1, ¶ 84. However, the state court ordered the footage preserved on April 29, 2016, just seven days after the arrest. *Id.*

In connection with his arrest, the plaintiff was charged with assaulting a police officer, in violation of Connecticut General Statutes § 53a-167c, but this charge was later dismissed. ECF No. 1, ¶ 85. On February 21, 2018, he pleaded guilty to the lesser included offense of interfering with an officer, in violation of Connecticut General Statutes § 53a-167a, and possession with intent to sell a controlled substance, in violation of § 21a-277(a). *State v. Salaman*, No. N23N-CR16-0166479-S (Conn. Super. Ct. Feb. 21, 2018). On May 17, 2018, the state court sentenced him to two years in prison. *Id.*

On July 25, 2018, the plaintiff filed a second civilian complaint with the NHPD Internal Affairs Unit. ECF No. 1, ¶ 87. This time, he complained that Maldonado covered up the misconduct of Murcko, Monk, Lopez, Maher, and Dell. *Id.* Two Internal Affairs officers interviewed the plaintiff on November 19, 2018. *Id.* at ¶ 88. At the interview, one of the officers told the plaintiff that she was going to close the case because the plaintiff had already raised the same issues in his first civilian complaint. *Id.* The plaintiff expressed his disagreement, stating that the second complaint concerned Maldonado's cover-up and new allegations of misconduct against Lopez, Dell and the other officers. *Id.* at ¶¶ 89-95. Nevertheless, the Internal Affairs Officer stated that she was going to close the complaint without doing any additional investigation. *Id.* at ¶ 96.

## III. Analysis

As best as the Court can surmise from his complaint, the plaintiff raises the following constitutional claims: (1) Murcko, Galvan, Monk, and Maher subjected him to excessive force, in violation of his Eighth Amendment protection against cruel and unusual punishment (¶¶ 100-03); (2) Lopez retaliated against him for exercising his First Amendment right to free speech by electing a trial on his 2014 criminal case (¶ 104); and (3) all defendants violated his First, Eighth, and Fourteenth Amendment rights by failing to properly investigate the circumstances of his arrest and civilian complaints (¶¶ 105-08). The Court will permit his excessive force claims to proceed but dismiss the remaining claims.

A. Excessive Force

***4** The plaintiff first claims that Murcko, Galvan, Monk, and Maher subjected him to excessive force, in violation of the Eighth Amendment, on the night of his arrest. ECF No. 1, ¶¶ 100-03. Because the plaintiff was an arrestee, and not a prisoner, at the time of the alleged use of excessive force, the Fourth Amendment, and not the Eighth Amendment, applies to this case. *See Orr v. Marquis*, No. 3:18-CV-1908 (MPS), 2019 WL 161504, at *3 (D. Conn. Jan. 10, 2019).

"The Fourth Amendment's protection against unreasonable seizures prohibits the use of excessive force by [law enforcement] officers in arresting suspects." *Orr v. Waterbury Police Dep't*, No. 3:17-CV-788 (VAB), 2018 WL 780218, at *5 (D. Conn. Feb. 8, 2018) (citing *Hemphill v. Scott*, 141 F. 3d 412, 416-17 (2d Cir. 1998)). To state a Fourth Amendment claim for excessive force, the plaintiff must allege facts showing that the defendants' use of force was "objectively unreasonable." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). The "reasonableness" of the use of force must be judged from the perspective of a reasonable officer on the scene. *Id.* (citing *Graham*, 490 U.S. at 396). It "requires consideration of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Hemphill*, 141 F.3d at 417).

When the plaintiff's complaint is construed liberally, he has stated a plausible Fourth Amendment excessive force claim against the arresting officers. All four officers were engaged in the pursuit of the plaintiff throughout the streets of New Haven, during which many of them allegedly crashed into the plaintiff and caused him to drive into oncoming traffic lanes, and Murcko allegedly grabbed the plaintiff's testicles during a pat down search after he had been placed in handcuffs. These allegations are sufficient to permit the excessive force claim to proceed against these defendants at this time.

B. Retaliation

The plaintiff next claims that Lopez retaliated against him for electing a trial on his 2014 criminal case and dating his ex-girlfriend by targeting his arrest on April 22, 2016. *See* ECF No. 1, ¶ 104. He claims that such retaliation violated his First Amendment right to free speech. *See id.*

To prevail on a free speech claim, the plaintiff must show "(1) that the speech or conduct at issue is protected under the First Amendment, (2) that the defendant[ ] took adverse action against [him], (3) that there was a causal connection between he protected speech or conduct and the adverse action, and (4) that the defendant['s] actions chilled the exercise of that right." *Marczeski v. Gavitt*, 354 F. Supp. 2d 190, 194 (D. Conn. 2005); *see also Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). He must allege facts which would support an inference that the defendants "harbored retaliatory intent." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999). However, the existence of probable cause is a complete defense to a claim of retaliatory arrest. *Golodner v. City of New London*, 443 F. App'x 622, 624 (2d Cir. 2011).

Certainly, electing a trial on criminal charges is a constitutionally protected interest. *See Marczeski*, 354 F. Supp. 2d at 194. However, the allegations do not sufficiently show a causal connection between the plaintiff's 2014 criminal case and the 2016 arrest. Even if Lopez had directed the investigation and arrest of the plaintiff in 2016, the claim that he was "targeting" the plaintiff because of the 2014 criminal case is entirely speculative. As for the plaintiff's other basis for retaliation, dating Lopez's ex-girlfriend is not a constitutionally protected activity. Moreover, even if the plaintiff's allegations had established a causal connection, his arrest on April 22, 2016 resulted in both a narcotics conviction and a conviction with interfering with an officer by way of guilty plea. Therefore, by his own admission in state court, probable cause existed for his 2016 arrest. *See Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999) (guilty plea bars claim of arrest without probable cause). Based on the foregoing, the First Amendment claim is dismissed.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

C. Remaining Constitutional Claims

***5** The plaintiff's remaining constitutional claims essentially challenge the defendants' failure to investigate and report accurately the events of April 22, 2016, which led to his arrest and convictions, and the civilian complaints he filed with the NHPD, which were both dismissed. *See* ECF No. 1, ¶¶ 105-08. These claims are subject to dismissal for the following reasons.

In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the United States Supreme Court held that where a judgment in favor of a plaintiff would necessarily implicate the validity of his conviction or length of sentence, a cause of action under § 1983 is not cognizable unless the plaintiff can show that his underlying "conviction or sentence had been reversed on direct appeal, declared invalid by a state tribunal authorized to make such a determination, or called into question by the issuance of a federal writ of habeas corpus." *See also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (state prisoner's § 1983 action is barred no matter relief sought, no matter the target of prisoner's suit, if success in action would necessarily demonstrate invalidity of conviction or duration). If the plaintiff in this case were to prevail on his claims that the defendants failed to accurately report the events leading up to his arrest and/or preserve any relevant video surveillance footage from the pursuit, the judgment would necessarily implicate the validity of his guilty plea to interfering with an officer, which according to the state judicial record, stemmed from his conduct on April 22, 2016, the date of his arrest.

Although the plaintiff frames his claims as violations of due process and equal protection of the laws, he is essentially claiming that his arrest and subsequent prosecution were based on false statements made by the defendants and their failure to procure evidence in support of his defense. Claims of false arrest and malicious prosecution both require a showing that the criminal proceedings that ensued terminated in the plaintiff's favor. *See Rodriguez v. Patterson*, No. 3:04-CV-25 (MRK), 2006 WL 1272620, at *1 (D. Conn. Apr. 5, 2006). Therefore, any claim against the defendants' investigation and prosecution of the plaintiff's April 22, 2016 arrest cannot proceed. [1]

1 The plaintiff remains free, of course, to challenge the accuracy of the police report, and to pursue any theory of a cover-up, in connection with his excessive force claim.

Similarly, the plaintiff's claims challenging the failure of the defendants to properly investigate his civilian complaints filed with the NHPD are not cognizable. This Court has previously held that there is no constitutional right to an adequate investigation or "after-the-fact punishment" by police officials. *See Santossio v. City of Bridgeport*, No. 3:01-CV-1460 (RNC), 2004 WL 2381559, at *4 (D. Conn. Sept. 28, 2004); *see also Appletree v. City of Hartford*, 555 F. Supp. 224, 227 (D. Conn. 1983) (rejecting plaintiff's claim that police departments' civilian complaint policy violates constitutional rights). Therefore, to the extent the plaintiff is raising separate constitutional claims against Murcko, Galvan, Monk, Lopez, Maher, Dell, Maldonado, and Cain based on their failure to properly investigate his civilian complaints, those claims are dismissed.

D. Claims against the City of New Haven, the NHPD, the State's Attorney's Office, the Supervisory Defendants, and the Individual Defendants in their Official Capacities

***6** The plaintiff is also suing the City of New Haven, the NHPD, the New Haven States' Attorney's Office, the Chief of Police, and Detective Lopez, who allegedly directed his arrest, under a supervisory liability theory. He also indicates that he is suing all of the individual defendants in their official capacities. (ECF No. 1 at ¶ 16.) After review of the allegations, the Court concludes that all of these claims except the supervisory liability claim against Detective Lopez cannot proceed.

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978). To prevail on a claim against a municipality under § 1983 based on the actions of a public official, the plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that

an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). The same standard applies to claims against police officers and other municipal employees sued in their official capacities. *See, e.g.*, *Duartes v. Cty. of Nassau*, No. 07CV2929JSWDW, 2008 WL 11449235, at *4 (E.D.N.Y. Sept. 30, 2008) ("A Section 1983 suit against a police officer in his official capacity is the equivalent of an action against the municipality itself.").

Here, the plaintiff has not alleged any facts suggesting that the conduct of the NHPD officers was related to any policy, custom, or practice established or implemented by the City of New Haven. The fact that some of the individual defendants may have violated his Fourth Amendment protection against excessive force is insufficient to state a claim for municipal liability against the city. *See Roe*, 542 F.3d at 36 (quoting *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 405 (1997)). Similarly, he cannot state a claim against the NHPD, which is essentially the same as a claim against the municipality it represents; *see Knighton v. City of Syracuse Fire Dept.*, 145 F. Supp. 2d 217, 222 n.7 (N.D. NY. 2001); or against the individual police officers in their official capacities. *See Cane v. New Britain Police Dep't*, No. 3:16-CV-1638 (SRU), 2017 WL 752278, at *3 (D. Conn. Feb. 27, 2017). As for his claims against the State's Attorney's Office, the plaintiff is essentially suing the State of Connecticut, against which he cannot recover damages. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (state agency not a person within meaning of § 1983). Therefore, the claims against the City of New Haven, the NHPD, the individual defendants in their official capacities, and the New Haven State's Attorney's Office are dismissed.

To the extent the plaintiff is suing Chief Campbell under a supervisory liability theory for the excessive force used against him on April 22, 2016, his claim fails. A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Here, the plaintiff does not allege sufficient facts showing that Chief Campbell participated in, directed, or even knew about the amount of force used against him on April 22, 2016.

***7** However, plaintiff does adequately allege that Detective Lopez was personally involved in the excessive force used against him on April 22, 2016. Although the allegations are thin, they plausibly allege that Lopez directly participated in the deprivation of plaintiff's rights. In particular, plaintiff alleges that Lopez "illegally sent" Murcko, Galvan, and Monk to "attac[k]" the plaintiff. (ECF No. 1 at ¶ 75.) While this conclusory allegation might not pass muster on its own, it is supported by others indicating that Lopez had a motive to encourage or direct the arresting defendants to use excessive force on his behalf (*see id.* ¶ 76 ("[Lopez] knew he couldn't do it him self because of the pending jury trial ...")) and that the arresting defendants told each other to report back to Lopez after the incident. (*Id.* at ¶ 67 ("Galvan ... shout[ed] [to Murcko] 'call' 'Lopez' tell him we got him ...").) The complaint thus supports an inference that Lopez not only was aware of the April 22, 2016 incident but affirmatively directed the arresting defendants to use excessive force on plaintiff, and so adequately alleges Lopez' personal involvement in the use of excessive force on plaintiff. *See Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 807 (S.D.N.Y. 2011) (concluding that plaintiff's allegation that supervisory defendant directed the officers to arrest plaintiff was sufficient to show personal involvement, but dismissing the supervisory liability claim for failing to adequately allege an underlying constitutional violation).

Therefore, while plaintiff's supervisory liability claim against Chief Campbell is dismissed as factually insufficient, his claim against Detective Lopez may proceed.

E. Declaratory and Injunctive Relief

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

In addition to damages, the plaintiff seeks a declaration that the defendants violated his constitutional rights and injunctive relief in the form of an order for the defendants to "cease their physical violence and retaliation towards [him]." *See* ECF No. 1, ¶¶ 110-11. Neither of these requests are cognizable.

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of that right or a disturbance of the relationship." *Colabella v. American Institute of Certified Public Accountants*, No. 10-CV-2291 (KAM) (ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted). Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages. *See In re Combustion Equip. Assoc., Inc.*, 838 F.3d 35, 37 (2d Cir. 1998). In this case, the plaintiff's request for declaratory relief concerns only past actions (i.e., the conduct of the police officers on the night of his arrest). He has not identified any legal relationships or issues that require resolution by declaratory relief. *See Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (Eleventh Amendment bars declaration that state violated federal law in the past). Therefore, his request for declaratory relief is dismissed.

As for his injunctive relief request, "an injunction [must] be 'more specific than a simple command that the defendant[s] obey the law.' " *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 620 (S.D.N.Y. 2018) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011)). The plaintiff has not alleged that the defendants are currently subjecting him to ongoing excessive force. Therefore, the request for injunctive relief is also dismissed.

**ORDERS**

(1) The plaintiff's Fourth Amendment claim for excessive force may proceed against Murcko, Galvan, Monk, and Maher in their individual capacities for damages, as may the claim for supervisory liability against Detective Lopez. All other claims are dismissed. The clerk is directed to terminate the remaining defendants.

***8** (2) Within **twenty-one (21) days** from the date of this Order, Clerk shall mail a waiver of service of process request packet containing the complaint (ECF No. 1) and this Order to Murcko, Galvan, Monk, Maher, and Lopez at the New Haven Police Department, 1 Union Avenue, New Haven, CT 06519. The Clerk shall report to the Court on the status of the waiver requests on the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him and he shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, according to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(5) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(6) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough

to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendants or defense counsel of his new address.

It is so ordered.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2231223

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,
v.
Andrew PETERS, Warden, Watertown Correctional Facility; Joseph Williams, Warden, Lincoln Work–Release Center; Francis J. Herman, Senior Parole Officer Interstate Bureau; T. Stanford, Senior Parole Officer; Deborah Stewart, Parole Officer; John Doe # 1, Parole Agent, Watertown Correctional Facility; John Doe # 2, Parole Agent, Lincoln Work Release Center; Susan Bishop, Director of Interstate Compact, South Carolina; Cecil Magee, Parole Officer, South Carolina; Frank Barton, Parole Officer, South Carolina; John McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg, PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The Capitol Albany, NY, for defendants Peters, Herman Stewart, Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant Attorney General, Carl N. Lundberg, Chief Legal Counsel, South Carolina Department of Probation, Columbia, SC, for defendants Bishop, Magee, Barton, McMahan, and Stanford, Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

***1** The above matter comes to me following a Report–Recommendation by Magistrate Judge Daniel Scanlon, Jr., duly filed on April 17, 1997. Following ten days from the service thereof, the Clerk has sent me the entire file, including any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil rights action on November 17, 1995. On February 12, 1996, Magistrate Judge Scanlon ordered Brown to submit an amended complaint alleging the specific acts committed by the individuals named as defendants which Brown claimed violated his constitutional rights. Brown filed an amended complaint on March 21, 1996. In his amended complaint, Brown alleged that defendants violated his rights under the Eighth and Fourteenth Amendments by failing to process properly his interstate compact paperwork, resulting in Brown being imprisoned pursuant to a parole hold when in fact he had never violated the conditions of his parole. For a more complete statement of Brown's claims, see his amended complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On August 19, 1996, defendants Bishop, Magee, Barton, and McMahan made a motion to dismiss the complaint against them or, in the alternative, for summary judgment. Dkt. No. 20. On October 17, 1996, defendants Herman, Stewart, and Stanford made a motion to dismiss for failure to state a claim. Dkt. No 34. On April 17, 1996, Magistrate Judge Scanlon recommended that all defendants' motions to dismiss be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the magistrate judge's report-recommendation, having been granted additional time in which to do so. Dkt. No. 52. In addition, Brown filed on June 9, 1997, a motion for leave to file a second amended complaint and a copy of his proposed amended complaint. Dkt. No. 53. I turn first to the last motion filed, Brown's motion for leave to amend his complaint a second time.

Brown seeks to file a second amended complaint "setting forth in detail the personal involvement of each defendant and how their acts of commission and omission served to deprive plaintiff of Constitutionally secured rights." Dkt. No. 53. The district court has discretion whether to grant leave to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). In exercising that discretion, the court should freely grant leave to amend when justice so requires. Fed.R.Civ.P. 15(a). However, the court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional allegations against the named defendants. However, the additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

***2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, *2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are

wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

***3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

1 I note, however, that the report-recommendation would survive even *de novo* review.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

## ORDER and REPORT–RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

## BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact

because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

***4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

***5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

***6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

***7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.
In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.
Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.